[No. 53342–3. En Banc. July 14, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. WARREN F. SCHAUPP, *Appellant,* BETTY RICHARDSON, *Respondent.*

*Rovai, Miller, Foley & Orlando* and *John A. Miller,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney for Thurston County,* and *John S. Bumford, Deputy,* for respondent State.

*Wolfe, Lobsenz & Cullen,* by *James E. Lobsenz* and *John W. Wolfe,* for respondent Richardson.

*John W. Ladenburg, Prosecuting Attorney for Pierce County,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* amici curiae for respondent State.

CALLOW, J.—Warren Schaupp seeks reinstatement of his guilty plea made pursuant to a plea agreement. The trial court vacated the plea due to a misrepresentation made by the prosecutor at the plea hearing. We hold Schaupp is entitled to reinstatement of his guilty plea and specific performance of the agreement.

The procedural history of this case is complex and only those facts necessary to the decision will be set forth. On July 22, 1985, Schaupp was charged with second degree murder for the shooting death of Frederick Chadwick. Several days before trial, the parties entered into a plea agreement in which the prosecutor agreed to seek dismissal of

the second degree murder charge in return for Schaupp's plea of guilty to second degree manslaughter.

On November 1, 1985, Schaupp appeared in Pierce County Superior Court before Judge Thomas Sauriol and pleaded guilty to second degree manslaughter. At that time, the prosecutor advised the court:

> The reason for the reduction in the plea is because of absent witnesses who are unable to be found who are essential to the prosecution.

No further explanations were given concerning the reasons for the plea agreement or the circumstances surrounding the shooting. After questioning Schaupp to determine that the plea was voluntary, the guilty plea was accepted.

Prior to sentencing, the victim's foster mother submitted a complaint requesting the plea be set aside. She alleged the prosecutor had misrepresented the necessity for the plea agreement, contending the State's witnesses were now available to testify and had been at the time the plea was accepted. After reviewing conflicting affidavits from the alleged missing witnesses and the prosecutor, Judge William Brown, who had been assigned the case for sentencing, appointed a special prosecutor to investigate the claim of prosecutorial fraud.

On May 12, 1986, an evidentiary hearing was held. The Pierce County Prosecutor's Office and the witnesses presented conflicting evidence regarding the witnesses' cooperation and reliability in the weeks prior to the scheduled trial and the prosecutor's ability to locate them at the time the guilty plea was entered.

At the conclusion of this special hearing, the trial court found no fraud, but found that the prosecutor's statement at the plea hearing was untrue and had misled Judge Sauriol by omitting material facts. The court noted that one of the witnesses had been subpoenaed, that another was in fact available when the plea was entered, and that although the prosecutor was having difficulty in locating the third witness at the time of the plea, all three had indicated they would be present at trial. The court found that

defense counsel was also aware of these facts and had a duty to correct the prosecutor's misrepresentation.

Judge Sauriol testified at the hearing that he probably would not have accepted the plea if he had known the prosecutor's explanation was false and if he had been informed the eyewitness was under subpoena and of the manner of the victim's death. The court held that the prosecutor's misrepresentation regarding the reason for the plea agreement violated RCW 9.94A.090, and therefore the plea was invalid. RCW 9.94A.090(1) provides:

> If a plea agreement has been reached by the prosecutor and the defendant pursuant to RCW 9.94A.080, they shall at the time of the defendant's plea state to the court, on the record, the nature of the agreement and the reasons for the agreement. The court, at the time of the plea, shall determine if the agreement is consistent with the interests of justice and with the prosecuting standards. If the court determines it is not consistent with the interests of justice and with the prosecuting standards, the court shall, on the record, inform the defendant and the prosecutor that they are not bound by the agreement and that the defendant may withdraw the defendant's plea of guilty, if one has been made, and enter a plea of not guilty.

RCW 9.94A.450 sets forth the prosecuting standard for plea dispositions and states in relevant part:

> (2) In certain circumstances, a plea agreement with a defendant in exchange for a plea of guilty to a charge or charges that may not fully describe the nature of his or her criminal conduct may be necessary and in the public interest. Such situations may include the following:
> (a) Evidentiary problems which make conviction on the original charges doubtful;

The court vacated the plea and reinstated the charge of second degree murder.

The State then proceeded to trial on the second degree murder charge and the jury convicted Schaupp of first degree manslaughter. On October 29, 1986, the court sentenced Schaupp to 48 months. He appeals.

Schaupp contends the trial court erred in vacating his plea once it had been accepted absent any evidence of misconduct or fault on his part. He urges that, as an innocent party, he is entitled to specific enforcement of the plea agreement.

 A plea agreement, once accepted by the court, is binding on the prosecutor. *State v. Hall,* 104 Wn.2d 486, 490, 706 P.2d 1074 (1985); *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977). In *Tourtellotte,* the State at sentencing sought to withdraw the defendant's guilty plea made pursuant to a plea agreement, due to the victims' objections. We reversed the trial court's grant of the State's motion. We held the integrity and fairness of the plea bargaining process required that the prosecutor honor the terms of the plea bargain.

> If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. No attorney in the state could in good conscience advise his client to plead guilty and strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain and not subvert the judicial process through external pressure whenever the occasion arises.
>
> A plea bargain is a binding agreement between the defendant and the State which is subject to the approval of the court. When the prosecutor breaks the plea bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea.

*Tourtellotte,* at 584. Those principles operate to bind the court, as well, once a plea agreement has been validly accepted. *See State v. Miller,* 110 Wn.2d 528, 756 P.2d 122 (1988); *United States v. Blackwell,* 694 F.2d 1325, 1337–39 (D.C. Cir. 1982); *United States v. Holman,* 728 F.2d 809, 813 (6th Cir.), *cert. denied,* 469 U.S. 983 (1984); *Banks v. State,* 56 Md. App. 38, 466 A.2d 69 (1983).

The State argues that, contrary to *Tourtellotte,* the court here did not vacate the plea because it later determined the plea agreement was inadvisable, but because of the misrepresentation made at the plea hearing. Generally, neither the

court nor the prosecutor are bound by a plea agreement procured through fraud or misrepresentation. *See State v. Hall,* 32 Wn. App. 108, 645 P.2d 1143 (1982); *In re Baca,* 34 Wn. App. 468, 662 P.2d 64 (1983). Here there is no evidence of fraud or other wrongdoing on the part of either Schaupp or his attorney.

Prior to the evidentiary hearing, the judge specifically asked and was informed that the special prosecutor had no evidence that the defendant or his attorney were involved in any misrepresentation or fraud. Further, we find no evidence in the record to support the court's factual finding that defense counsel knew the prosecutor was misrepresenting the facts.[1] Findings of fact will only be upheld if supported by substantial evidence. *Fred Hutchinson Cancer Research Ctr. v. Holman,* 107 Wn.2d 693, 712, 732 P.2d 974 (1987). The trial court entered a finding that at the time the plea was entered defendant's attorney knew a witness had been subpoenaed and that all three witnesses had said they would appear for trial. Finding of fact 7. The record indicates that defendant's attorney had no contact whatsoever with two of the witnesses, and met with the third witness once, approximately 2½ weeks before the scheduled trial. Apparently due to subsequent difficulties encountered in locating the witnesses, the prosecutor phoned defendant's attorney the week before trial and agreed to accept Schaupp's standing offer to plead guilty to second degree manslaughter. The prosecutor and defense

---

[1]Defendant did not assign error to the court's finding as required by RAP 10.3(g). However, under RAP 1.2(a) a

"technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [this court] will consider the merits of the challenge."

*State v. Williams,* 96 Wn.2d 215, 220, 634 P.2d 868 (1981) (quoting *Daughtry v. Jet Aeration Co.,* 91 Wn.2d 704, 710, 592 P.2d 631 (1979)). The defendant objected to the finding when entered. His argument on appeal implicitly challenges the court's finding and the finding is quoted in the defendant's brief. Justice would not be served by deciding this case on the basis of technical compliance or noncompliance with the rule. *See* RAP 1.2(a).

counsel both testified that defendant's attorney was not told why the prosecutor was willing to plea bargain. We find no other evidence in the record to support a finding that *at the time the plea was entered,* defense counsel knew the witnesses were in fact available to testify. There was no collaboration between the parties to mislead the court. The trial court erred in allowing an evidentiary hearing and in vacating the plea absent any evidence of fault on the part of the defendant or his attorney. The defendant's position should not be undermined as a result of the State's error. *Tourtellotte,* at 584.

The State contends that the principles in *Tourtellotte* do not apply due to the Sentencing Reform Act of 1981 (SRA), which now requires substantive judicial approval of plea agreements. The court must determine, before accepting a plea, that it is "consistent with the interests of justice and with the prosecuting standards." RCW 9.94A.090(1). The State contends because the prosecutor misled the court, that determination was not properly made; thus, the court was required to vacate the plea when it later determined the plea agreement violated the statute. A similar argument was advanced in *State v. Miller,* 110 Wn.2d at 528. In *Miller,* the court discovered prior to sentencing that a previously accepted plea agreement contained information inconsistent with the SRA, and ordered specific performance. The Court of Appeals reversed, holding the court could not knowingly impose a sentence that violated the SRA, and could vacate the plea prior to sentencing. We held the plea agreement could be enforced despite its conflict with the statute, noting that "[d]efendants' constitutional rights under plea agreements take priority over statutory provisions." *Miller,* at 533. The court also stated that

> the integrity of the plea bargain process requires that defendants be entitled to rely on plea bargains as soon as the court has accepted the plea. *State v. Tourtellotte, supra* at 585. The trial court is required to determine the validity of the plea agreement before accepting the plea.

RCW 9.94A.090. It is at this point that the defendant is entitled to rely on the benefit of the bargain, not the time of sentencing.

*Miller,* at 536. We reaffirm that holding here. Absent any fault on the defendant's part for the error in a plea agreement, he is entitled to rely on it once it is accepted by the trial court.

The public's interest in ensuring that a plea agreement is consistent with the interests of justice can be protected at the time the plea is accepted. The parties are required to state the nature of the agreement and the reasons for the agreement. RCW 9.94A.090(1). Those reasons, of course, must be truthful and must be sufficient to satisfy the court that the plea agreement is in the interest of justice. The defendant and both counsel should provide any further information the court requests, and may not purposefully withhold information. *See* RCW 9.94A.460. The court acts in a supervisory role and not as a participant. RCW 9.94A.080; *State v. Haner,* 95 Wn.2d 858, 631 P.2d 381 (1981); *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975). If the court is not satisfied with the information given, it may reject the plea agreement or defer its decision until further information is provided. *See* D. Boerner, *Sentencing in Washington* §§ 12.23, 12.24 (1985).

Two remedies are available for breach of a plea bargain— withdrawal of the plea and specific performance. *State v. Miller, supra* at 531; *State v. Tourtellotte, supra* at 585. The defendant's choice of remedy controls, absent compelling reasons to the contrary. *Miller,* at 535. The defendant here seeks specific performance. Schaupp was not at fault for any error in the plea and therefore that is the requisite remedy. As noted in *Tourtellotte,*

> [t]o place the defendant in a position in which he must again bargain with the state is unquestionably to his disadvantage. The security he had gained as a result of the plea negotiation from being charged with the more grievous offense would be lost. The defendant is entitled to the benefit of his original bargain.

(Citations omitted.) *Tourtellotte,* at 585. In view of our disposition of this issue we need not address other issues raised.

The judgment and sentence entered October 29, 1986, are vacated. Schaupp's guilty plea and the plea agreement entered on November 1, 1985, are reinstated. The cause is remanded to the trial court for resentencing pursuant to the plea entered November 1, 1985.

PEARSON, C.J., and DOLLIVER, DORE, and GOODLOE, JJ., concur.

BRACHTENBACH, J. (dissenting)—I dissent for two reasons, one is procedural, the other substantive.

Procedurally, the majority does not accurately state the record. The whole premise of the majority's holding is that it can ignore, for lack of evidence, a finding of fact. There Is No Assignment of Error to Any Finding of Fact or Conclusion of Law. Two of the briefs call specific attention to this failure to assign error to any finding of fact or conclusion. The majority ignores this challenge.

What were those crucial findings of fact which have become verities in this appeal?

The question must first be put in context. The case arises from the statement by the deputy prosecutor at the time of defendant's plea, to wit:

> The reason for the reduction in the plea [*sic*] is be-cause of absent witnesses who are unable to be found who are essential to the prosecution.

Verbatim Report of Proceedings, at 2 (Nov. 1, 1985).

The trial court entered these unchallenged findings:

### III.

All three [essential] witnesses had repeatedly told Mr. Roche [deputy prosecutor] that they would be present at the trial.

### IV.

Lila McMahon [one of the essential witnesses] had been subpoenaed for the trial and had told Mr. Roche and Mr. Miller, attorney for the defendant, that she

would be present at the trial. The subpoena was in the clerk's file.

## VII.

Mr. Miller [defense attorney] did not correct this statement of Mr. Roche in open court before Judge Sauriol. Mr. Miller knew that all three witnesses had said they would be present and that Lila McMahon had been subpoenaed for the trial and had said that she would appear at that time.

The court then entered this conclusion of law:

## V.

Mr. Miller [defense attorney] was required by R.C.W. 9.94A.090 to advise Judge Sauriol that the witnesses would be present and had indicated that they would be present. Defense counsel is required by this statute to correct any obvious misrepresentations by the prosecuting attorney relative to the request to the court for a reduction of the plea and an approval of a plea agreement.

The majority is content to rely on appellant's assertion in his brief that the trial judge found no fault on the part of appellant nor his attorney. Majority, at 39–40. Brief of Appellant, at 1. The facts are that Judge Brown made the following comments which obviously led to his findings and conclusions:

I certainly feel that a defense attorney can't sit there, or stand there I should say, and allow a court to be given information which that particular attorney knows is inaccurate. And to that extent I'm sorry Mr. Miller isn't here, because it sounds like I am saying something when he isn't here, and I know he doesn't think I do that. But, I'm satisfied that Mr. Miller was aware that these witnesses were present and would testify.

. . . To that extent I'm satisfied that he [Miller] allowed Mr. Roche to misinform the Court, and his responsibility, in my opinion, was to clear up that misunderstanding before the Court.

Verbatim Report of Proceedings, at 21–22 (June 13, 1986).

So, to that extent, it's my opinion when we look at the speedy trial, that the defense was involved in this to the extent that they allowed the Court to be misinformed. So

the fact that Mr. Schaupp's matter was handled the way it was, to a certain extent, was contributed to by Mr. Miller, as Mr. Schaupp's defense counsel.

Verbatim Report of Proceedings, at 22–23 (June 13, 1986).

Contrary to the majority's conclusion from its search of the record, it is clear that defense counsel and the deputy prosecutor met with witness McMahon, described as the most essential prosecution witness, 2 weeks before the plea taking. The witness never said she would not be available to testify. She was under subpoena. Verbatim Report of Proceedings, at 25–30 (May 12, 1986).

It is obvious from the judge's comments that the trial court was aware of the significance of defense counsel's actions, nonactions and responsibility. The judge also was careful about the content of the findings and conclusions. He stated: "Now, I've reviewed them [the findings and conclusions]. I'm satisfied they're accurate." Verbatim Report of Proceedings, at 2 (July 3, 1986).

This case and the majority opinion once again demonstrate the essential need to assign error to a finding or conclusion, set it out and reference the record. RAP 10.3(g) and RAP 10.4(c) were not complied with by appellant and are ignored by the majority. Thus, respondents were not put to the burden of combing the record and supplying evidence and inferences therefrom which support the findings and conclusions. This posture undermines the integrity of the trial court proceedings and deprives this court of material assistance in reviewing an extensive record. The majority compounds the error by ignoring salient portions of the record.

Consequently, I believe the majority's whole conclusion collapses because it is based upon a faulty and false premise.

I also disagree with the substantive statements of the majority, in this factual context, that there must be fraud, fault or wrongdoing on the part of the defendant or his attorney. Majority, at 39. There is some merit to the

majority's concept, but its statements are so ill defined that it is unclear what it is holding.

The statute places an affirmative duty on the prosecutor and the defendant (through his counsel in most cases). RCW 9.94A.090(1) provides in part:

> If a plea agreement has been reached by the prosecutor and the defendant . . . *they shall* at the time of the defendant's plea state to the court, *on the record,* the nature of the agreement and the reasons for the agreement.

(Italics mine.) The majority's suggestion or perhaps holding that there must be affirmative evidence of fraud or fault is not warranted. Because of the mandate of the statute the defendant and his attorney embrace the prosecutor's statement of reasons for the agreement. If defense counsel knows of material error or misrepresentations in the prosecutor's statement of reasons, defense counsel cannot sit silently while the court is misled. Thus, *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977), relied upon by the majority, is not on point. *On this record,* it is an established verity that defense counsel know the true status of the witnesses. If we follow the appellate rules, that is beyond challenge.

It is these facts, found by the trial court and unchallenged, which put upon the defendant's counsel the burden to comply with the statute. He had an affirmative duty to state reasons for the agreement. He chose to sit silently, thereby endorsing the prosecutor's statements. He should be thereby bound.

I would affirm.

ANDERSEN, J., and CUNNINGHAM, J. Pro Tem., concur with BRACHTENBACH, J.

DURHAM, J. (dissenting)—I concur in Justice Brachtenbach's dissenting opinion. I also disagree with the majority in its contention that a defendant may, at his option, obtain enforcement of a plea agreement that conflicts with

the criminal sentencing laws. *See State v. Miller,* 110 Wn.2d 528, 537–41, 756 P.2d 122 (1988) (Durham, J., concurring in the result).

ANDERSEN, J., concurs with DURHAM, J.