[No. 18621-1-III.   Division Three.   February 22, 2000.]

*In the Matter of the Personal Restraint of* MONTE C. HOISINGTON, *Petitioner.*

*John Henry Browne* of *Browne & Ressler,* for petitioner.
*Ray D. Lutes, Prosecuting Attorney*, for respondent.

SCHULTHEIS, J. — Monte C. Hoisington pleaded guilty in 1991 to second-degree rape and second-degree burglary. He

is currently serving an exceptional sentence of 325 months. In this petition, he seeks to specifically enforce the original plea agreement under which he first pleaded guilty. Both he and the State based that agreement on their incorrect belief that RCW 9A.44.050 defined second-degree rape as a class B felony, with a maximum sentence of 10 years.

The State moves to dismiss Mr. Hoisington's petition because he filed it more than one year after the judgment against him became final. *See* RCW 10.73.090. In the alternative, it argues it performed its part of the plea agreement when it recommended the superior court sentence Mr. Hoisington to 114 months for his offenses.

We conclude the one-year limitation period of RCW 10.73.090 was equitably tolled in Mr. Hoisington's case. In his prior appeals and in a prior personal restraint petition, Mr. Hoisington raised the issue of specific enforcement of his plea agreement, but the court failed to address it. Further, we conclude that Mr. Hoisington has a right to specific enforcement of his plea agreement, unless the State proves on remand that such a remedy is unjust.

FACTS

In 1991, Asotin County charged Mr. Hoisington with first-degree burglary and first-degree rape. Mr. Hoisington and the State subsequently entered into a plea bargain. The State agreed to reduce the charges to second-degree burglary and second-degree rape and to recommend a standard range sentence of 114 months, in exchange for Mr. Hoisington's guilty pleas. The amended information the State filed with the plea agreement stated, incorrectly, that second-degree rape was a class B felony with a maximum term of 10 years. The Legislature had recently amended RCW 9A.44.050, increasing second-degree rape to a class A felony with a maximum punishment of life imprisonment. *See* LAWS OF 1990, ch. 3, § 901.

The parties proceeded to the guilty plea hearing without

learning of their mistake. At the hearing, the judge asked Mr. Hoisington, "[a]nd you understand that the crimes with which you are charged carry a maximum sentence of 10 years imprisonment and a $20,000 fine?" Mr. Hoisington answered, "Yes."[1] The court continued, "So while the sentencing grid . . . has a high end of 130 months, . . . the court, under the present law, could not sentence you even in an exceptional sentence to over 120 months; everybody understands that?" Mr. Hoisington answered, "Yes." Further along in the hearing, the court advised him that it did not have to follow sentencing recommendations; however, the court also observed that it was "limited by the maximum, the statutory maximum on the sentence." Mr. Hoisington then pleaded guilty, and the court approved the statement of defendant on plea of guilty and the order amending the information.

The guilty plea hearing took place on November 6, 1991. On December 13 defense counsel notified Mr. Hoisington by letter that the prosecutor had informed him that the amended information mistakenly charged him under the old statute. However, counsel also advised Mr. Hoisington that the prosecutor still intended to ask for a standard range sentence, the high end of which was 130 months. However, to procure that recommendation, Mr. Hoisington had to agree to permit the State to amend the information to indicate that second-degree rape was a class A felony punishable by a maximum of life in prison. Counsel continued: "If for any reason you are not willing to agree to this change, [the prosecutor] would then request the Court to allow him to back out of the plea bargain agreement and no longer continue to recommend a favorable disposition of your case and would look forward to trial and seek an exceptional sentence." The letter closed with counsel telling Mr. Hoisington the results of the DNA tests

---

[1] At this point in the proceedings, the court and the prosecutor discussed the sentencing guidelines form which set Mr. Hoisington's maximum, given his offender score, at 130 months, which was more than the alleged statutory maximum for the offense. They concluded that the court could not sentence Mr. Hoisington for more than the statutory maximum.

were now available and positively identified him as the perpetrator.

Mr. Hoisington signed a stipulated amended plea agreement correctly identifying the rape charge as a class A felony with a maximum of life. The remainder of the agreement was the same as the first agreement, including the State's promise to recommend a standard range sentence of 114 months. However, the court did not follow the State's recommendation and, instead, imposed an exceptional sentence of the maximum—life.

Mr. Hoisington appealed. A panel of this court reversed, holding that the sentencing court erred when it imposed an indeterminate sentence. The panel remanded the case and directed the sentencing court to enter an exact number of months as a sentence. On remand, the sentencing court imposed an exceptional sentence of 325 months. Mr. Hoisington again appealed, and this court's commissioner affirmed.

## LAW

Mr. Hoisington contends he had a right to specifically enforce his original plea agreement that assumed his maximum sentence for second-degree rape was 10 years. He asserts it was ineffective assistance of counsel for his attorney to fail to advise him of that right.

Mr. Hoisington relies upon *State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988). In *Miller*, the defendant pleaded guilty to first-degree murder pursuant to a plea bargain that specified he was free to argue to the court for a below standard range exceptional sentence of less than 20 years. The parties also agreed that the State would not recommend such a sentence but would recommend a sentence of 20 years. Three months later, but before sentencing, they discovered that the mandatory minimum term for first-degree murder is, by statute, 20 years. *See* RCW 9.94A-.120(4). The defendant moved to withdraw his plea. The trial court refused on the ground the plea agreement could

be specifically enforced, despite the statutory minimum. Nevertheless, defense counsel did not present any evidence of mitigating factors, believing the court was bound by the statutory minimum. The court sentenced the defendant to 20 years.

The *Miller* court first observed that a guilty plea entered on a plea bargain that is based upon misinformation about sentencing consequences is not knowingly made. 110 Wn.2d at 531. In such circumstances, the court can permit the defendant to withdraw his plea, or it may grant specific enforcement of the agreement. *Id.* (citing *State v. Tourtellotte*, 88 Wn.2d 579, 585, 564 P.2d 799 (1977)). The fact the terms of the plea agreement are contrary to the explicit terms of a sentencing statute does not preclude enforcement of the agreement, *"where fundamental principles of due process so dictate*[.]*" Id.* at 532 (emphasis added) (citing *State v. Cosner*, 85 Wn.2d 45, 530 P.2d 317 (1975)). Because "[d]efendants' constitutional rights under plea agreements take priority over statutory provisions," the *Miller* court refused to hold that withdrawal of a plea is the only remedy when the agreement clashes with the sentencing statutes. *Id.* at 533. In fact, withdrawal of the plea "may be unjust, especially where the defendant has relied to his or her detriment on the plea bargaining process by giving evidence to the State." *Id.*

*Miller* reviewed the Supreme Court's prior opinions in this area, which did not resolve the issue of whether the choice of remedy, withdrawal of the plea or specific enforcement, is in the sole discretion of the sentencing court, or whether the defendant makes the choice. 110 Wn.2d at 534-35. The court concluded "that the defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy." *Id.* at 535. The court cited two examples of "compelling reasons" to reject the defendant's choice. One, a defendant's choice of specific enforcement may be unfair if the plea agreement was the result of misinformation provided by the defendant. And, two, a defendant's choice of withdrawal of the plea may be unfair

"if the prosecutor has detrimentally relied on the bargain and has lost essential witnesses or evidence." *Id.*

■ The *Miller* court summarized its holding as follows: "[W]here the terms of a plea agreement conflict with the law or the defendant was not informed of the sentencing consequences of the plea, *the defendant must be given the initial choice of a remedy* to specifically enforce the agreement or withdraw the plea. The prosecutor bears the burden of demonstrating that the defendant's choice of remedy is unjust." *Id.* at 536 (emphasis added).

Just a few months after it decided *Miller,* the Supreme Court addressed these principles again in *State v. Schaupp,* 111 Wn.2d 34, 757 P.2d 970 (1988). There, the defendant entered a guilty plea to second-degree manslaughter after the prosecutor agreed to dismiss the second-degree murder charge the State had lodged against him. At the guilty plea hearing, the prosecutor told the court that "[t]he reason for the reduction . . . is because of absent witnesses who are unable to be found who are essential to the prosecution." *Id.* at 36. Before sentencing, relatives of the victim disputed the prosecutor's claim. In response, the court appointed a special prosecutor, conducted an evidentiary hearing, and thereafter concluded that the witnesses were available at the time the prosecutor had represented otherwise. The court then vacated the plea, and reinstated the charge of second-degree murder. *Id.* at 37. A jury convicted the defendant of first-degree manslaughter.

In its decision granting Mr. Schaupp's appeal, the Supreme Court cited the rule that "[a] plea agreement, once accepted by the court, is binding on the prosecutor." *Id.* at 38. The reason for this rule is that a prosecutor who breaches a plea bargain undercuts the basis for the defendant's waiver of constitutional rights that is implicit in the plea. *Id.* Further, [t]hose principles operate to bind the court, as well, once a plea agreement has been validly accepted." *Id.* The court noted that in the case before it the special prosecutor had found no evidence the defendant or his attorney were involved in the prosecutor's misrepresen-

tation about the availability of the witnesses. *Id.* at 39. Relying on *Miller,* 110 Wn.2d at 535, the court held that, under the circumstances, the defendant's choice of specific enforcement of the agreement controlled. *Schaupp,* 111 Wn.2d at 41.

### APPLICATION OF LAW

Mr. Hoisington cites *Miller* and *Schaupp* and argues he had a right to enforce the original plea agreement, which was based on the parties' understanding the maximum sentence for the crime of second-degree rape was 10 years. And, he contends his trial attorney provided ineffective assistance of counsel when he did not advise him he had a choice to withdraw his pleas or to enforce the plea bargain. He asks this court to order specific enforcement of his plea agreement and to reduce his sentence to a maximum of 10 years.

The State takes the position that the court cannot consider Mr. Hoisington's petition because it is barred by RCW 10.73.090, which limits a collateral attack on a judgment to one year after the judgment becomes final. The court does not have authority to waive a statutory limitation period, as opposed to a time limit imposed by a court rule. *See Shumway v. Payne,* 136 Wn.2d 383, 399, 964 P.2d 349 (1998). But, Mr. Hoisington's counsel argues the statute was equitably tolled, because he raised the issue of specific enforcement of the plea agreement in his two appeals and in a prior personal restraint petition, but the court failed to address it.

██ ██ "The doctrine of equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." *State v. Duvall,* 86 Wn. App. 871, 874, 940 P.2d 671 (1997), *review denied,* 134 Wn.2d 1012 (1998). Appropriate circumstances for equitable tolling include " 'bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff.' " *Id.* at 875 (quoting *Finkelstein*

*v. Security Properties, Inc.*, 76 Wn. App. 733, 739-40, 888 P.2d 161, *review denied*, 127 Wn.2d 1002 (1995)).

The doctrine of equitable tolling applies to statutes of limitation but not to time limitations that are jurisdictional. *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998). In *Miller*, the court held that Congress intended a statute that set a one-year time limit for filing a writ of habeas corpus to function as a statute of limitation and not as a jurisdictional bar. As such, it was subject to equitable modifications such as tolling. The court looked to the language of the statute in making its determination. The statute itself referred to the one-year period as a limitation period. It did not use the word "jurisdiction." And, the statute affirmatively separated the time limitation provision from a section that dealt with jurisdiction.

■ RCW 10.73.090 also functions as a statute of limitation and not as a jurisdictional bar. Like the statute considered in *Miller*, 145 F.3d 616, it does not use the term "jurisdiction." And, the Legislature separated the time limitation provision in RCW 10.73.090 from RCW 10.73-.140. The latter statute is clearly jurisdictional. It provides that "[i]f a person has previously filed a petition for personal restraint, *the court of appeals will not consider the petition*," except in certain circumstances. *See In re Personal Restraint of Johnson*, 131 Wn.2d 558, 565, 933 P.2d 1019 (1997).

Since RCW 10.73.090 is a statute of limitation, it is subject to the doctrine of equitable tolling. The circumstances here are appropriate for equitable tolling. Mr. Hoisington clearly raised the specific enforcement/ineffective assistance issue in his pro se brief in his first appeal. The court did not address the issue in its opinion deciding that appeal. He raised the issue again in a subsequent appeal and in a prior personal restraint petition, but the court continued to ignore it. Mr. Hoisington exercised due diligence. The fault is with the court for not addressing his

claim when he first raised it in his direct appeal.[2] We therefore hold that the one-year statute of limitation of RCW 10.73.090 was equitably tolled in Mr. Hoisington's case.

The State's next argument is that Mr. Hoisington already has received specific enforcement of the plea agreement. According to the State, that agreement only bound the prosecutor to recommend a 114-month sentence in exchange for Mr. Hoisington's guilty pleas. The prosecutor made that recommendation at sentencing following the second guilty plea hearing.

The State relies heavily on the fact the superior court mistakenly advised Mr. Hoisington at the guilty plea hearing that second-degree rape carried a 10-year maximum sentence. It compares Mr. Hoisington's situation to that of the defendant in *State v. Wakefield*, 130 Wn.2d 464, 925 P.2d 183 (1996). There, the superior court judge told the defendant she would likely receive a sentence within the standard range if she pleaded guilty. Instead, the court sentenced the defendant to an exceptional sentence. On ap-

---

[2]Specifically, in the pro se brief that Mr. Hoisington filed in his first appeal, he raised the following question as issue 3: "Was defense counsel inadequate by not arguing for specific performance of the Plea Agreement, or filing a timely motion for a collateral estoppel once Plea Agreement was ratified by the State, the Defense Counsel, the Appellant and the Trial Court?" At page 12 of that brief, Mr. Hoisington asked: "Why didn't defense counsel tell his client about his constitutional right (due process) to specific performance of the plea agreement?" Mr. Hoisington also cited the court to *Schaupp*. This court dealt with the pro se issues regarding the plea bargain in a single paragraph in its opinion. It did not answer the question posed. It stated that

> Mr. Hoisington alleges he was led to believe the judge had agreed to a provision of the plea agreement which would limit his sentence to a maximum of 114 months. The judge's signature appears on the plea agreement immediately following a statement finding the agreement "consistent with the interests of justice and the prosecutorial standards." The document does not indicate the judge would be bound by the terms of the agreement. Moreover, the record of the sentencing hearing discloses that immediately prior to accepting Mr. Hoisington's guilty plea the court advised him it did not have to follow anyone's sentencing recommendation. There was no error.

*State v. Hoisington*, No. 12164-0-III, slip op. at 12 (Wash. Ct. App. July 8, 1993). Mr. Hoisington raised this issue again in the second appeal. And, he raised it in his first personal restraint petition, and in his motion for discretionary review in the Supreme Court following this court's dismissal of that petition. Neither this court nor the Supreme Court ever addressed the issue.

peal, the defendant argued that under *State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1994), the proper remedy was to require the sentencing court to impose a standard range sentence. Instead, the court limited her to the option of withdrawing her plea, finding that the superior court judge's comments may have misled her. It held that the principles discussed in *Miller* did not apply to misstatements by a court in explaining the plea and sentencing process.

The flaw in the State's argument is that, here, the superior court's mistake stemmed from the parties' mistake that a 10-year maximum applied to second-degree rape. That mistake was a basis for Mr. Hoisington's agreement to plead guilty. The original plea agreement provided that the State would reduce the burglary and rape counts to second degree. Although it did not contain any particulars about the maximum sentences for the reduced charges, the information that the State filed with the agreement identified them as class B felonies with maximum sentences of 10 years.

In addition, the amended plea agreement entered after the parties learned of their mistake, recited that both the State and Mr. Hoisington entered the original plea agreement with the understanding that second-degree rape was a class B felony. The amended plea agreement read as follows:

> Plaintiff, the State of Washington, and defendant, MONTE C. HOISINGTON, *having previously entered into a plea agreement* which resulted in defendant entering a plea of guilty to the crime of rape in the second degree . . . and having done so *with the understanding that rape in the second degree is a class B felony* and now understanding that rape in the second degree is a class A felony, and defendant being desirous to amend the plea agreement to document that rape in the second degree is a class A felony[, the parties agree to modify the agreement to reflect that change].

(Emphasis added.) The wording clearly indicates that both parties entered the first agreement with the understanding that second-degree rape was a class B felony.

Mr. Hoisington's situation is far closer to that in *Miller* than to that in *Wakefield*. In *Miller*, the defendant pleaded guilty pursuant to a plea bargain that specified he could argue for a below standard range sentence of less than 20 years. Later, the parties discovered the mandatory minimum for the offense was 20 years. Similarly, the parties in Mr. Hoisington's case believed that second-degree rape was a class B felony, which has a 10-year statutory maximum, and later discovered the charge was a class A felony with a maximum of life. When viewed in the context of the information that charged second-degree rape as a class B felony, it is clear that the parties' plea agreement contemplated a sentence of no more than 10 years. And, the language of the amended plea agreement, quoted above, supports such a finding.

The remaining question is whether Mr. Hoisington can seek specific enforcement of the original agreement when, subsequent to that agreement, he signed a stipulated amended plea agreement that correctly identified the rape charge as a class A felony with a maximum sentence of life imprisonment. Mr. Hoisington contends he made this stipulation without the effective assistance of counsel. That is, counsel presented him with only two options—agree to the change or withdraw the pleas and stand trial. Counsel did not advise him that he had a right to specific enforcement of the original plea agreement.

In challenging the effectiveness of his lawyer's representation in this process, Mr. Hoisington has the burden of showing his counsel's performance was deficient and that the deficient performance prejudiced the defense. *See In re Personal Restraint of Riley*, 122 Wn.2d 772, 780, 863 P.2d 554 (1993). In light of the holdings in *Miller* and *Schaupp*, counsel's performance was deficient in not advising Mr. Hoisington he also had the option of specific enforcement. And, it cannot be doubted that counsel's performance prejudiced the defense. A reasonable probability exists that, but for counsel's errors, Mr. Hoisington would have sought

specific enforcement of the original plea agreement and not entered the stipulation.

CONCLUSION

Accordingly, the court grants Mr. Hoisington's petition. We remand the case to the superior court for a hearing, as provided in *Miller*, 110 Wn.2d 528, to give the State the opportunity to show that the remedy of specific enforcement of the original plea agreement, as opposed to withdrawal of the pleas, is unjust.

KURTZ, C.J., and SWEENEY, J., concur.

Reconsideration denied March 24, 2000.