[No. 29009-0-II.   Division Two.   August 26, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. KYLE FRANKLIN ROBERSON, *Appellant*.

*John A. Hays*, for appellant.

*Susan I. Baur, Prosecuting Attorney*, and *Tierra A. Busby, Deputy*, for respondent.

HUNT, C.J. — Juvenile Kyle F. Roberson appeals his 65-week manifest injustice disposition for first degree child molestation of his three-year-old cousin, imposed after he violated the terms of a plea agreement with the State. He argues that: (1) the State breached the plea agreement, (2) trial counsel was ineffective in failing to seek specific enforcement of the plea agreement, (3) the trial court denied him his right to allocution, and (4) the trial court erred by imposing a 65-week manifest injustice disposition.

We agree with Roberson that (1) denial of his right to allocution calls for reversal of his sentence and remand for resentencing by a different judge, (2) the dispute over

whether he breached his plea agreement with the State calls for an evidentiary hearing, and (3) although the record justifies a manifest injustice disposition, the factors on which the trial court relied do not support a 65-week manifest injustice disposition. Therefore, we remand for an evidentiary hearing and a new disposition hearing.

## FACTS

### I. MOLESTATION

On January 12, 2002, 13-year-old Kyle Roberson babysat for H.M., his three-year-old cousin, for approximately 30 minutes. When H.M.'s mother returned home, H.M. was in her bedroom naked.

Later that evening, H.M.'s father, M., was in the bathroom. When H.M. came in, H.M. said, "Kyle has a pee-pee like you," and left the bathroom. M. went to H.M.'s bedroom and asked how she knew about Roberson's penis. H.M. replied that Roberson had shown her his penis. M. asked where, and H.M. told him in the bathroom. M. told H.M.'s mother what H.M. had told him.

H.M. told her mother about having taken a bath in the tub with Roberson and Roberson having kissed her "pee-pee." When her mother asked what else Roberson had done to her, H.M. responded that she had sat on Roberson's lap and kissed his penis.

Later that evening, Officer Doug Lane of the Kelso Police Department interviewed Roberson. Roberson wrote a statement admitting that (1) he and H.M. had taken a shower and bath together while he babysat her; (2) he had kissed H.M.'s buttocks; and (3) he had asked H.M. to kiss his penis, which she did.

### II. PLEA AGREEMENT; PSYCHOSEXUAL REPORT

The State charged Roberson with one count of first degree child molestation, to which Roberson pleaded guilty. In

return, the State agreed to recommend amendment to either fourth degree assault with sexual motivation or indecent exposure, on condition that Roberson first take a sexual history polygraph and show that the molestation charged was an isolated incident.

Roberson failed his first polygraph test. He passed the second. Dr. Jon Ingram conducted a psychosexual evaluation of Roberson on June 9.

In his report, Dr. Ingram noted that Roberson was highly sexualized because of extreme exposure to pornography. This high sexualization and poor behavior control led Dr. Ingram to conclude that Roberson had a moderate to high risk of reoffending. Dr. Ingram also noted that in the months leading up to the child molestation charge, Roberson's behavior patterns had become more serious.

Roberson also admitted to having engaged in prior voyeuristic activities involving as many as 20 females on numerous occasions. Roberson's voyeurism continued while he was in detention. He told Dr. Ingram that he had viewed his girl friend and his girl friend's sister on numerous occasions while both were living in the detention center.

Dr. Ingram further noted that Roberson demonstrated some ability to engage in treatment. He also noted several impediments to successful treatment. First, Roberson proposed to stay with his neighbors, the Ganis family; but he often "peeped" at girls when in the Ganis boys' company and he viewed pornography on numerous occasions while at the Ganis house. Dr. Ingram found this proposed living arrangement unacceptable because of the children's access to pornography, which the Ganis parents seemed to condone, and Roberson's inappropriate acts of voyeurism involving the girls in the family.

Second, Roberson's father was not a responsible parent to monitor him. Roberson watched pornographic videos with his father, who minimized the molestation offense and repeatedly stated in front of Roberson that he was being mistreated by the entire juvenile justice system. Moreover,

Roberson's father lived in a house owned by Roberson's paternal grandparents, where Roberson's young victim, H.M., and her parents, Roberson's aunt and uncle, also lived.

Dr. Ingram reported that Roberson needed adolescent sex offender treatment from a certified sex offender treatment provider, if Roberson remained in the community, or from an approved provider in the Juvenile Rehabilitation Administration (JRA). Dr. Ingram also recommended that Roberson not remain in the community because his family lacked control over him. He therefore recommended that Roberson be committed to the JRA for a period of time sufficient for treatment—a minimum of one year.

### III. Sentencing

At the disposition hearing, the State recommended a manifest injustice sentence upward and commitment to the JRA for treatment instead of allowing Roberson to withdraw his guilty plea and plead to a lesser charge as provided in the plea agreement. Roberson's probation officer suggested a 65-week manifest injustice disposition upwards in order to provide 52 weeks of treatment as suggested by Dr. Ingram. This recommendation took into consideration that allowing for good-time early release, Roberson would likely be incarcerated for only 80 percent of his set detention time; thus, in order to keep Roberson confined for 52 weeks of treatment, the trial court would have to set his term at 65 weeks. Through counsel Roberson asked that he be placed with the Ganis family so he could receive treatment in the community.

Before pronouncing sentence, the trial court gave Roberson's father an opportunity to address the court. His father gave the court a letter to read, which addressed events that had occurred before the plea or the finding of guilt. Roberson's father offered no reasons why a manifest injustice disposition would be unfair to his son; instead, he attempted to dispute Dr. Ingram's report.

The court failed to ask Roberson if he wanted to address the court. Neither Roberson nor his attorney requested an opportunity for Roberson to speak directly to the court.

The court sentenced Roberson to a manifest injustice disposition of 65 weeks, based on the psychosexual evaluation, specifically noting five factors: (1) Roberson's risk of reoffense, (2) the need for a very structured living arrangement in which to obtain treatment, (3) the lack of structured living in the community, (4) insufficient time to obtain treatment under the standard range of 15 to 36 weeks, and (5) the victim's vulnerability. Roberson appeals.

## ANALYSIS

### I. Plea Agreement

Roberson argues that the State's failure to follow the plea agreement, which would have allowed him to withdraw his guilty plea and to plead to a lesser charge, denied him his right to due process. He also asserts that he received ineffective assistance of counsel because trial counsel did not seek specific enforcement of the plea agreement. The State responds that it was not bound by the plea agreement because Roberson failed to comply with the requirements of the plea agreement when (1) he responded in a deceptive manner to the first polygraph examination and (2) the second exam revealed that Roberson had a history of sexually deviant behavior. Therefore, the State argues, the prosecutor properly rescinded the plea agreement and trial counsel was not ineffective in failing to seek specific enforcement.

■ When the State breaches a plea agreement, a defendant can either withdraw his plea or seek specific performance of the agreement. *State v. Schaupp*, 111 Wn.2d 34, 41, 757 P.2d 970 (1988); *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988). But when the defendant fails to perform the agreed terms, the trial court must conduct an evidentiary hearing, at which the State must prove by a

preponderance of the evidence that the defendant failed to perform his part of the agreement. *In re Pers. Restraint of James*, 96 Wn.2d 847, 850, 640 P.2d 18 (1982), *review denied*, 100 Wn.2d 1023 (1983).

Here, the State offered to allow Roberson to plead guilty to a lesser charge if he performed the agreed conditions, namely to pass a polygraph test and to maintain the apparent status quo such that the charged molestation was an isolated incident. Although Roberson passed the second polygraph test, his psychosexual evaluation noted that (1) he had been deceptive with his answers on the first polygraph test; and (2) he had been involved in other sexual acts of voyeurism, including during the time in detention after he entered his plea.

## A. Remand

On appeal, Roberson and the State continue to debate whether Roberson's "peeping" activities are other "incidents" as referenced in the plea agreement, which Roberson argues meant other acts of molestation or deviant sexual touching. We cannot resolve this dispute from the record before us.

Accordingly, we remand to the trial court to conduct an evidentiary hearing at which the burden will be on the State to prove by a preponderance of the evidence that Roberson did not comply with the terms of the plea agreement. If the State meets this burden, the first degree child molestation conviction will remain, but Roberson will be entitled to a new disposition hearing before a different judge. *See* discussion, section II, *infra*. If, however, the State fails to carry its burden, Roberson will have the option of either specific enforcement of the original plea agreement or withdrawal of his plea. *Schaupp*, 111 Wn.2d at 41.

## B. Effective Assistance of Counsel

■ To sustain a claim of ineffective assistance of counsel, Roberson must show that: (1) counsel's performance was

deficient; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Roberson makes neither showing here.[1]

Roberson has not shown that the State breached the plea agreement such that he was entitled to choose the remedy of specific enforcement or withdrawal of his plea. On the contrary, the State rescinded the plea agreement because it claimed that Roberson failed to complete the requirements of the agreement. Thus, Roberson's trial counsel's performance was not deficient, nor did counsel's performance prejudice him.

## II. Right to Allocution

Roberson contends that he is entitled to a new sentencing hearing because he was denied the right to allocution. The State responds that Roberson failed to assert his right to allocution and is not entitled to a new hearing. We agree with Roberson.

█ A defendant convicted of a crime has the right to allocution at the time of sentencing. *State v. Aguilar-Rivera*, 83 Wn. App. 199, 201-02, 920 P.2d 623 (1996). Similarly, RCW 13.40.150(3)(d) requires the trial court to "afford" a juvenile defendant an opportunity to speak on his or her behalf.[2] Here, Roberson never requested an opportunity to address the court directly, but the trial court never

---

[1] Roberson's reliance on *In re Pers. Restraint of Hoisington*, 99 Wn. App. 423, 993 P.2d 296 (2000) is misplaced. *Hoisington* involved a plea agreement that referenced the wrong maximum sentence, which Hoisington allowed the State to correct. But Hoisington's counsel never advised him of his right to specific enforcement of the original plea agreement, which the court found deficient. *Hoisington*, 99 Wn. App. at 425, 434.

[2] RCW 13.40.150(3) provides, in pertinent part:

Before entering a dispositional order as to a respondent found to have committed an offense, the court shall hold a disposition hearing, at which the court shall:

asked Roberson if he wanted to speak. The comments by Roberson's father are no substitute for Roberson's addressing the court on his own behalf.[3] We conclude that under these circumstances, in failing to ask Roberson directly whether he wanted to address the court, the trial court did not "afford" Roberson an opportunity to speak at his disposition hearing as required in RCW 13.40.150(3)(d).

We acknowledge that Divisions One and Three have held that the inadvertent failure by the trial court to grant a defendant the opportunity to speak at sentencing is not necessarily reversible error. *State v. Gonzales*, 90 Wn. App. 852, 854, 954 P.2d 360, *review denied*, 136 Wn.2d 1024 (1998); *State v. Avila*, 102 Wn. App. 882, 898, 10 P.3d 486 (2000), *review denied*, 143 Wn.2d 1009 (2001). In *Gonzales*, Division One concluded that no prejudice resulted because Gonzales received the lowest possible standard range sentence. *Gonzales*, 90 Wn. App. at 855. Similarly, in *Avila*, Division Three held the trial court's failure to provide the defendant an opportunity to address the court was harmless because his sentence was well below the maximum prescribed under the statute. *Avila*, 102 Wn. App. at 898.

But we cannot say here that the trial court's failure to ask Roberson if he wished to speak was harmless error. First, Roberson received a high manifest injustice disposition, not a low one as in *Gonzales* and *Avila*. Second, there is an unresolved dispute as to the crime for which Roberson should have been sentenced—(1) first degree child molestation, as the State asserts, based on Roberson's alleged, but as yet unproven, breach of the plea agreement; or (2) a lesser offense such as fourth degree assault with sexual motivation or indecent exposure, as Roberson contends,

. . . .

(d) Consult with the respondent's parent, guardian, or custodian on the appropriateness of dispositional options under consideration *and afford the respondent* and the respondent's parent, guardian, or custodian *an opportunity to speak* in the respondent's behalf.

(Emphasis added.)

[3] On the contrary, Roberson's father's comments did not seek leniency for his son but instead disputed allegations in the psychosexual report.

based on his assertion that he complied with the terms of the plea agreement.

As we have already determined that a remand is necessary to resolve this dispute, there necessarily will also be a new disposition hearing before a different judge. At this hearing, the court must afford Roberson an opportunity to address the court.

### III. MANIFEST INJUSTICE

In light of our reversal of Roberson's manifest injustice disposition and remand for a new disposition hearing by a different judge, his arguments concerning his disposition are moot. Nonetheless, because the same issues may arise following resentencing, we address them now.

### A. Standard of Review

We review a finding of manifest injustice according to RCW 13.40.230(2), which provides:

> To uphold a disposition outside the standard range, the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.

We apply the abuse of discretion standard. *State v. Sledge*, 133 Wn.2d 828, 844, 947 P.2d 1199 (1997). If the record supports one or more of the factors relied upon by the juvenile court to support the manifest injustice disposition, then we affirm the juvenile court's decision. *State v. S.H.*, 75 Wn. App. 1, 12, 877 P.2d 205 (1994), *review denied*, 125 Wn.2d 1016 (1995).

### B. Abuse of Discretion

Under RCW 13.40.160(2), the juvenile court may impose a disposition in excess of the standard range only when the

court determines that the imposition of a standard range would effectuate manifest injustice. If the standard range sentence imposes a "serious, and clear danger to society," then manifest injustice results. RCW 13.40.020(17).

Here, the juvenile court relied upon five factors: (1) Roberson's risk of reoffense, (2) the need for a structured living arrangement in which to obtain treatment, (3) there was no structured living arrangement in the community, (4) the standard range of 15 to 36 weeks was not sufficient to obtain treatment, and (5) the vulnerability of the victim. The record provided sufficient evidence to support manifest injustice disposition.

### 1. Risk of Reoffense

Protecting society from dangerous juvenile offenders is a recognized reason for a disposition outside the standard range. *S.H.*, 75 Wn. App. at 11. A finding that a juvenile poses a high risk to reoffend is reversible only if there is not substantial evidence in the record to support the finding. *State v. J.N.*, 64 Wn. App. 112, 114, 823 P.2d 1128 (1992). The record here supports the finding.

Dr. Ingram's psychosexual evaluation explained that (1) Roberson had become highly sexualized as a result of his extreme exposure to pornography, (2) his behavior pattern had increased in seriousness during the months leading up to the charged incident, and (3) Roberson posed a moderate to high risk of reoffending. Evidence such as this, contained in a written evaluation, is sufficient to support a finding of dangerousness. *State v. Jacobsen*, 95 Wn. App. 967, 982, 977 P.2d 1250 (1999). Here, there was sufficient evidence of Roberson's dangerousness in his risk of reoffense.

### 2. Suitable Living Arrangement and Successful Treatment Opportunity

Roberson asserts that it is unjust to send him to the JRA for over a year simply because the community lacks a

suitable living environment, which is not his fault. But according to Dr. Ingram's report, if Roberson is to have any chance at successful treatment, it must be in a structured environment with consistent trained therapeutic support. And Roberson cannot receive this treatment outside the JRA, regardless of whose fault it might be.

### 3. Victim Vulnerability

██ Vulnerability of the victim is a statutory aggravating factor under RCW 13.40.150(3)(h)(i)-(iii). Case law supports the use of this aggravating factor in the grant of a manifest injustice disposition.[4] Here, the victim was three years old at the time of the molestation, and she was living in the same home where Roberson lived with his father. Evidence of this nature by itself supports the court's finding that the victim was particularly vulnerable because of her young age. *State v. Fisher*, 108 Wn.2d 419, 425, 739 P.2d 683 (1987). Thus, the court had legitimate grounds for finding that victim vulnerability was an aggravating factor.

Accordingly, we hold that the record supports the trial court's exercise of its discretion to impose a manifest injustice disposition. Nonetheless, we question its grounds for the length of confinement.

### C. Length of Confinement

██ Roberson contends that the court erred by imposing a 65-week manifest injustice disposition. He argues that in following his probation officer's recommendation, the sentencing court improperly tacked on additional time beyond that needed for 52 weeks of treatment, to allow for possible earned early release time, which resulted in a sentence far longer than justified.

---

[4] *See State v. Fisher*, 108 Wn.2d 419, 425, 739 P.2d 683 (1987) (five and one-half year old victim found to be a vulnerable); *State v. J.S.*, 70 Wn. App. 659, 667, 855 P.2d 280 (1993) (four-year-old "particularly vulnerable" due to extreme youth).

Washington courts have consistently held that early release availability for a juvenile offender is not an acceptable reason for imposing an exceptional sentence. *Sledge*, 133 Wn.2d at 845-46. Thus, a court may not impose a sentence longer than the standard range simply because the standard range would be inadequate if shortened by early release. *Id. See also State v. Bourgeois*, 72 Wn. App. 650, 660-61, 866 P.2d 43 (1994). Here, Dr. Ingram recommended a treatment program of 52 weeks. The possibility of early release did not justify the trial court's manifest injustice disposition upward beyond this 52-week period.

Accordingly, we remand for an evidentiary hearing to determine whether Roberson breached the plea agreement and for a new disposition hearing before a different judge, who shall afford Roberson his right to address the court.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.