[No. 18297-5-III.    Division Three.    May 23, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE MARTINEZ-LAZO, *Appellant*.

*Nicholas W. Marchi* of *Carney & Marchi*, for appellant.
*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

MUNSON, J.* — Jose Martinez-Lazo pleaded guilty to one count of third degree child molestation. Because of his guilty plea, the Immigration and Naturalization Service initiated removal proceedings against him to deport him to Mexico. Mr. Martinez-Lazo moved to withdraw his guilty plea, and the trial court denied his motion. Mr. Martinez-Lazo appeals, contending he was denied effective assistance of counsel because his trial attorney failed to move to suppress his allegedly inculpatory statements under the Vienna Convention on Consular Relations, and because his counsel did not warn him of the deportation consequences of pleading guilty. We affirm.

## FACTS

Jose Martinez-Lazo, a citizen of Mexico, is a permanent resident of the United States and has lived here since 1990. In 1996, he was charged with one count of rape of a child in the third degree. In January 1998, Mr. Martinez-Lazo pleaded guilty to one count of third degree child molesta-

---

*Judge Ray E. Munson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

tion pursuant to a plea agreement, and he received a standard range sentence. Paragraph 4(f) of the plea form stated "a plea of guilty to an offense punishable as a crime under state law may be grounds for deportation . . . ." At the plea hearing, the trial court engaged in a colloquy with Mr. Martinez-Lazo. During the colloquy, Mr. Martinez-Lazo stated he had discussed the plea statement with his counsel, he understood it and he signed it voluntarily.

In October 1998, the Immigration and Naturalization Service initiated removal proceedings against him based on his conviction, and the immigration judge entered a removal order. In view of the removal order, Mr. Martinez-Lazo filed a motion to withdraw his guilty plea and vacate the judgment. Mr. Martinez-Lazo claimed his plea was involuntary. He also claimed his trial counsel ineffectively represented him because counsel did not move to suppress allegedly incriminating statements he made to law enforcement officials. Mr. Martinez-Lazo has not made those statements part of the record.

Mr. Martinez-Lazo received the *Miranda* warnings before he spoke with the police. *See Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

After a hearing on the matter, the trial court denied the motion. Mr. Martinez-Lazo appealed.

## ANALYSIS

The first issue is whether Mr. Martinez-Lazo was denied effective assistance of counsel because his trial attorney failed to move to suppress his statements under the Vienna Convention on Consular Relations.

■ This court reviews the trial court's denial of a motion to withdraw a plea for an abuse of discretion. *State v. Olmsted,* 70 Wn.2d 116, 119, 422 P.2d 312 (1966). A court abuses its discretion if its decision is based on clearly untenable or manifestly unreasonable grounds. *Id.*

■ "The court shall allow a defendant to withdraw the de-

fendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). A manifest injustice is " 'an injustice that is obvious, directly observable, overt, [and] not obscure.' " *State v. Smith*, 74 Wn. App. 844, 847, 875 P.2d 1249 (1994) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)), *review denied*, 125 Wn.2d 1017 (1995). The denial of effective assistance of counsel or an involuntary plea may constitute a "manifest injustice." *Smith*, 74 Wn. App. at 848 (citing *Taylor*, 83 Wn.2d at 597).

■ ■ "Review of an ineffective assistance claim begins with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). To establish ineffective assistance of counsel, the defendant must first show that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"The first element is met by showing counsel's conduct fell below an objective standard of reasonableness. The second element is met by showing that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the proceeding would have been different." *Pirtle*, 136 Wn.2d at 487 (citations omitted). If either element is not satisfied, the inquiry need go no further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). The *Strickland* test applies to claims of ineffective assistance of counsel arising from plea bargains. *State v. McCollum*, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997), *review denied*, 137 Wn.2d 1035 (1999).

Article 36(1)(b) of the Vienna Convention on Consular Relations provides:

> [I]f he so requests, the competent authorities of the receiving State [arresting State] shall, without delay, inform the consular post of the sending State [foreign national's State] if, within its consular district, a national of that State is arrested

or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.

Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ("Article 36" or "Convention"). The Convention requires an arresting government to notify a foreign national who has been arrested or taken into custody of his or her right to contact consular officials. *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir.), *cert. denied*, 519 U.S. 995 (1996).

▆ Here, the parties do not dispute that the Convention was violated.[1] Thus, the issue becomes whether the trial court would have granted his motion to suppress if his trial counsel had raised Article 36. *See State v. Contreras*, 92 Wn. App. 307, 319, 966 P.2d 915 (1998) (defendant did not demonstrate prejudice arising from trial counsel's failure to move to suppress where he did not show that the motion to suppress would have been granted).

The Ninth Circuit has recently addressed the issue of whether suppression is the appropriate remedy for a viola-

---

[1]The State also does not dispute, and therefore we do not address, whether the Convention creates individually enforceable rights that Mr. Martinez-Lazo may raise. Whether this is the case is still an open question. *Compare United States v. Hongla-Yamche*, 55 F. Supp. 2d 74, 78 (D. Mass. 1999) (Article 36 confers an individual right to consular notification and standing to contest alleged violations of this right), *and United States v. Rodrigues*, 68 F. Supp. 2d 178, 182 (E.D.N.Y. 1999) ("most courts in the United States have recognized that Article 36 does create standing for foreign nationals to assert their individual rights"), *with United States v. Tapia-Mendoza*, 41 F. Supp. 2d 1250, 1253 (D. Utah 1999) (it is "doubtful" that an individual has standing, but declining to decide the issue), *and Kasi v. Commonwealth*, 256 Va. 407, 508 S.E.2d 57, 64 (1998) (Convention's provisions do not create individual rights), *cert. denied*, 527 U.S. 1038, 119 S. Ct. 2399, 144 L. Ed. 2d 798 (1999). The Supreme Court left this issue open in *Breard v. Greene*, 523 U.S. 371, 376, 118 S. Ct. 1352, 140 L. Ed. 2d 529 (1998): "The Vienna Convention . . . arguably confers on an individual the right to consular assistance following arrest." The Ninth Circuit has also declined to resolve this question. *See United States v. Lombera-Camorlinga*, 206 F.3d 882 (9th Cir. 2000) (en banc).

tion of the Convention. *United States v. Lombera-Camorlinga*, 206 F.3d 882 (9th Cir. 2000) (en banc). In *Lombera-Camorlinga*, the court held that "a foreign national's postarrest statements should not be excluded solely because he made them before being told of his right to consular notification." *Id.* at 888. The court reasoned that the Convention was drafted three years before *Miranda*, and there was no basis to conclude that it had the purpose of protecting an individual's right against self-incrimination or right to counsel because these are "uniquely American rights." *Id.* at 886. Furthermore, the court noted that the exclusionary rule is typically applicable only to constitutional violations, and not for statutory or treaty violations. *Id.* Finally, the court deferred to the State Department's interpretation that a judicial remedy is inappropriate because the State Department has historically investigated violations of the Convention and worked with local law enforcement to ensure compliance, and because no other signatories to the Convention have permitted suppression under similar circumstances. *Id.* at 887-88.

The First Circuit has similarly concluded that the exclusion of postarrest statements is not an appropriate remedy for a violation of the Convention. *United States v. Li*, 206 F.3d 56, 60, 66 (1st Cir. 2000) (en banc).[2] In *Li*, the court found that the Convention did not create fundamental rights on par with those usually protected by the suppression of the evidence. *Id.* at 61-62. The court then looked to the Convention's text and found that it did not address whether suppression is appropriate. *Id.* at 62. Given the textual ambiguity, the court relied on nontextual sources, including the State Department's interpretation of the treaty, to conclude that suppression was not a remedy under the Convention. *Id.* at 63-66.

In view of *Li* and *Lombera-Camorlinga*, we hold that suppression is not a remedy available to Mr. Martinez-Lazo.

---

[2]The *Li* court concurrently construed a second treaty, the United States-People's Republic of China Bilateral Convention on Consular Relations, which is not at issue in the present case.

Accordingly, Mr. Martinez-Lazo has failed to demonstrate a reasonable probability that the outcome of the proceeding would have been different. *Pirtle*, 136 Wn.2d at 487. Thus, the trial court did not abuse its discretion when it denied Mr. Martinez-Lazo's motion on this ground.

The next issue is whether Mr. Martinez-Lazo received ineffective assistance because his counsel did not warn him of the deportation consequences of his guilty plea.

■ "In the context of a guilty plea, the defendant must show that his counsel failed to 'actually and substantially [assist] his client in deciding whether to plead guilty,' and that but for counsel's failure to adequately advise him, he would not have pleaded guilty." *McCollum*, 88 Wn. App. at 982 (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901 (1981)).

■ A plea must be intelligent and voluntary for due process purposes. *State v. Ward*, 123 Wn.2d 488, 512, 869 P.2d 1062 (1994). In addition, CrR 4.2(d) provides: "The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." A defendant must be advised of the direct consequences of his or her plea but need not be advised of all possible collateral consequences of a plea. *Ward*, 123 Wn.2d at 512.

In view of these considerations, trial counsel has the obligation to aid a defendant " 'in evaluating the evidence against him and in discussing the possible *direct* consequences of a guilty plea.' " *State v. Holley*, 75 Wn. App. 191, 197, 876 P.2d 973 (1994) (quoting *State v. Malik*, 37 Wn. App. 414, 417, 680 P.2d 770, *review denied*, 102 Wn.2d 1023 (1984)). However, a defendant need not be advised of the possibility of deportation because "a deportation proceeding that occurs subsequent to the entry of a guilty plea is merely a collateral consequence of that plea." *In re Personal Restraint of Yim*, 139 Wn.2d 581, 588, 989 P.2d 512 (1999); *accord, Holley*, 75 Wn. App. at 197.

Mr. Martinez-Lazo acknowledges the general rule in

Washington that deportation is a collateral consequence, but argues that deportation is no longer a collateral matter due to changes to the Immigration and Naturalization Act (INA) ushered in by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), and the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) (IIRIRA).[3] In view of these changes, Mr. Martinez-Lazo contends his deportation is certain, and therefore no longer a collateral consequence.

A deportation proceeding is a collateral civil action because it is " 'not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility.' " *In re Personal Restraint of Peters*, 50 Wn. App. 702, 704, 750 P.2d 643 (1988) (quoting *Michel v. United States*, 507 F.2d 461, 465 (2d Cir. 1974)). As the Seventh Circuit has stated:

> A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in "criminal prosecutions," this assurance does not extend to collateral aspects of the prosecution.

*United States v. George*, 869 F.2d 333, 337 (7th Cir. 1989).

■ The changes to the INA may make Mr. Martinez-

---

[3]Prior to the enactment of these laws, a permanent resident accused of any crime triggering deportation could seek a waiver of deportation, called a 212(c) waiver. *Mojica v. Reno*, 970 F. Supp. 130, 137 (E.D.N.Y. 1997); *see* former 8 U.S.C. § 1182(c). A 212(c) waiver was precluded for a permanent resident whose crime constituted an "aggravated felony" and who served five or more years in prison. *Mojica*, 970 F. Supp. at 137. The AEDPA amended section 212(c) to provide that the waiver was not applicable to anyone who committed an aggravated felony, regardless of the sentence imposed. *Id.* The IIRIRA eliminated the waiver altogether. IIRIRA, Pub. L. 104-208, § 304(b), 110 Stat. 3009-597. The current discretionary relief specifically excludes permanent residents who commit aggravated felonies. 8 U.S.C. § 1229b(a). Mr. Martinez-Lazo's conviction constitutes an aggravated felony under the INA. 8 U.S.C. § 1101(a)(43)(A) (the term aggravated felony includes the sexual abuse of a minor).

Lazo's deportation certain, but they do not alter its collateral nature as an independent civil proceeding over which the sentencing judge has no control. Deportation remains a collateral consequence. Thus, the trial court was not required to grant Mr. Martinez-Lazo's motion to withdraw his plea. *Holley*, 75 Wn. App. at 197. The trial court did not abuse its discretion.

Affirmed.

SWEENEY and KATO, JJ., concur.

Review denied at 142 Wn.2d 1003 (2000).