51 P.3d 116 (2002)
112 Wash.App. 749
STATE of Washington, Respondent,
v.
Peter T. LITTLEFAIR, Appellant.
No. 24924-3-II.
Court of Appeals of Washington, Division 2.
August 2, 2002.
*117 George A. Kolin, Washougal, WA, for Appellant.
Peter S. Banks, Prosecutor's Office, Skamania Co Courthouse, Stevenson, WA, for Respondent.
MORGAN, J.
Peter T. Littlefair, a resident alien, pled guilty after his attorney struck a portion of the plea form that would have told him deportation was a possible consequence. Relying on RCW 10.40.200, he moved to set aside his plea. The trial court denied his motion, but we reverse and remand.
Littlefair was born in Canada but raised in New Jersey, where his parents still reside. He is a resident alien but not a United States citizen.
In December 1995, the police searched Littlefair's house and found growing marijuana plants. In March 1996, the State charged Littlefair with manufacturing marijuana. At all times thereafter, Littlefair had counsel.[1]
In August 1996, during a pretrial hearing on a motion to suppress, Littlefair testified in open court "that he was born in Canada, and raised in New Jersey."[2] The court and both counsel were present at that time.
On October 17, 1996, Littlefair pled guilty and was sentenced. The court imposed two days in jail, 240 hours of community service, two years of supervision, and about $3200 in costs and fines.
Before October 17, 1996, Littlefair's attorney prepared a written plea form. The form had six pages and twelve numbered sections. Section 6 was subdivided into sixteen lettered subsections, each of which described one or more consequences of pleading guilty.[3] Eight of the sixteen subsections were stricken by using three typewritten "x"s to mark through their letter designations, apparently to indicate they did not apply to Littlefair. One of the eight thus stricken, subsection (6)(n), would have told Littlefair that he could be deported as a consequence of his plea. As prepared, section 6 appeared as follows:
6. IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA, I UNDERSTAND THAT:
(a) The crime with which I am charged carries a maximum sentence of 5 years imprisonment and/or $10,000.00 fine. The standard sentencing range is from 0 months to 3 months confinement....
(b) The standard sentencing range is based on the crime charged and my criminal history....
(c) The prosecuting attorney's statement of my criminal history is attached to this agreement....
(d) If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard range and the prosecuting attorney's recommendation may increase....
(e) In addition to sentencing me to confinement for the standard range, the judge will order me to pay *118 $__________ as a victim's compensation fund assessment....
(f) The prosecuting authority will make the following recommendation to the Judge: See Plea Agreement attached....
(g) The judge does not have to follow anyone's recommendation as to sentence....
XXX The crime of ________ has a mandatory minimum sentence of ________ years of total confinement. The law does not allow any reduction of this sentence. (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
XXX The sentence imposed on Counts ______ will run consecutively unless the judge finds substantial and compelling reasons to do otherwise. (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
XXX In addition to confinement, the judge will sentence me to community placement for at least one year.... (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
(k) The judge may sentence me as a first time offender instead of giving a sentence within the standard range if I qualify under RCW 9.94A.030 (20).... (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
XXX This plea of guilty will result in revocation of my privilege to drive.... (If not applicable, this paragraph should be stricken and initialed by the Defendant and the judge.)
XXX If this crime involves a sexual offense, prostitution, or a drug offense associated with hypodermic needles, I will be required to undergo testing for the human immunodeficiency (AIDS) virus. (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
XXX If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under the state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
XXX If this crime involves a sex offense or a violent offense, I will be required to provide a sample of my blood for ... DNA identification analysis.... (If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)
XXX If this crime involves a sex offense, I will be required to register with the sheriff of the county where I reside....(If not applicable, this paragraph should be stricken and initialed by the defendant and the judge.)[[4]]
On October 17, 1996, about 15-20 minutes before he went into court, Littlefair met an associate of his attorney in the hallway of the courthouse. He had not met the associate before. The associate handed him the written plea form and told him to read it. Littlefair had not seen the plea form before, and the associate did not discuss it with him. Littlefair read the form as instructedbut not the eight subsections that had been marked out. Thinking that those eight did not apply to him, he "just skipped over them" and "read the ones that would be pertaining to the plea bargain."[5]
Immediately after reviewing the plea form, Littlefair entered the courtroom and pled guilty. He did not "know from his attorneys or any other source that he would be subject to deportation[.]"[6] His attorney's routine practice was "to not inquire of a defendant's citizenship status if the defendant was not a person of color or did not *119 have an Hispanic surname."[7] Adhering to that practice in this case, the attorney assumed Littlefair was a United States citizen and "neglected to inform him" of any deportation consequences.[8]
During the plea proceeding itself, no one followed the parenthetical instructions in subsections (6)(h) through (6)(m) and (6)(o) through (6)(p). Neither Littlefair nor the judge initialed the subsections that had been stricken, and no one noted that subsection (6)(n) was not supposed to be marked out.[9]
After the plea and sentence, more than two years elapsed. Then, on November 2, 1998, the Immigration and Naturalization Service (INS) notified Littlefair that it would seek to deport him because of his conviction. At that time, for the first time, Littlefair "became aware of the deportation consequences as a result of his plea of guilty."[10]
On May 3, 1999, Littlefair moved to withdraw his guilty plea. He stated that he "would not have changed his plea ... had [he] known that he in fact would be deported."[11] The State responded that he was required to bring his motion within one year of October 17, 1996, and that he had failed to do that.
On July 16, 1999, a hearing was held. The trial court ruled that Littlefair's motion was "not timely" because Littlefair had not filed it within one year of October 17, 1996.[12] The court also ruled, with respect to the merits, as follows:
First of all, there's a distinction between the paragraph concerning citizenship and the other paragraphs that must be stricken.... All of those [other paragraphs] ... have ... parentheses that state, "If not applicable, this paragraph should be stricken and initialed by the defendant and the judge." That parenthetical language does not appear on the paragraph concerning citizenship.
In other words, that paragraph applies to every judgment and sentence. It is not a paragraph that should be stricken.... The only thing was that somebody put in three Xs there....
Mr. Littlefair had an opportunity to read all of the plea statement. He indicated by his signature that he did.... Also, if you look at the case of State v. Malik, 37 Wash.App. 414, 680 P.2d 770, which was decided in 1984, that case stated that, "Failure to advise a defendant of immigration consequences is not grounds to withdraw a plea because it's a collateral not a direct consequence of the plea. And the court does not have to advise the defendant of all collateral consequences of a plea."[13]
Based on these rulings, the court entered written findings and an order denying Littlefair's motion to withdraw his plea.
On appeal, the parties debate two main issues. (1) Did the trial court err by holding that Littlefair's motion was time-barred? (2) If not, did the trial court err by holding that Littlefair was not entitled to withdraw his plea? We address each in turn.

I.
The first issue is whether the trial court erred by holding that Littlefair's motion to withdraw his plea was time-barred. RCW 10.73.090 provides:
(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal.
*120 "Collateral attack" includes ... a motion to withdraw a guilty plea....[[14]]
The State contends that Littlefair was required to file his motion to withdraw his plea within one year of October 17, 1996; that he failed to do that; and thus that he is time-barred. Littlefair acknowledges that he did not file his motion within one year after October 17, 1996. He claims, however, that he "did not receive notice from the INS until November, 1998[;]" that until then he had no way to know he was subject to deportation; and that to hold his motion untimely would be "to ignore the equity of [his] plight[.]"[15] Accordingly, we address (A) whether RCW 10.73.090 can be equitably tolled, and (B) whether RCW 10.73.090 should be tolled in light of the unique circumstances present here.

A.
In re Personal Restraint Petition of Hoisington[16] is presently the leading case on whether RCW 10.73.090 can be equitably tolled. In that case, Division Three held that "[t]he doctrine of equitable tolling applies to statutes of limitation but not to time limitations that are jurisdictional;" that RCW 10.73.090 "functions as a statute of limitation and not as a jurisdictional bar[;]" and thus that RCW 10.73.090 "is subject to the doctrine of equitable tolling."[17]
In re Hoisington relied on State v. Duvall.[18] The issue there was whether former RCW 9.94A.142's 60-day period for setting restitution had been equitably tolled. Answering in the affirmative, Division One stated:
[I]f the Legislature intended the 60-day period as a jurisdictional limit, then the court was without power to determine restitution after 60 days had expired. But if the Legislature intended the 60-day period to operate as an ordinary statute of limitations, then the limit is subject to principles of waiver and estoppel, including the doctrine of equitable tolling. The doctrine of equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed.[[19]]
In re Hoisington is supported by federal cases, and also by a commentator who has examined RCW 10.73.090 in depth. The federal cases hold that an analogous statutory time limit[20] for filing a writ of habeas corpus is subject to equitable tolling.[21] The commentator states that RCW 10.73.090 can be equitably tolled for at least two reasons:
First, the statute's text, legislative history, structure, purpose, and policy implications indicate that the time limit is a statute of limitation, not a jurisdictional bar, and thus can be equitably tolled. Second, the state and federal collateral attack filing deadlines are analogous statutes; because Washington law is virtually silent on *121 whether RCW 10.73.090 is subject to equitable tolling, state courts should follow the reasoning of the wealth of federal authority holding that the federal time limit can be equitably tolled.[[22]]
Based on these authorities, we hold that RCW 10.73.090 can be subject to equitable tolling in a proper case.[23]

B.
In State v. Robinson,[24] Division One summarized the circumstances under which RCW 10.73.090 should be equitably tolled. It stated:
Equitable tolling "permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." State v. Duvall, 86 Wash.App. 871, 874, 940 P.2d 671 (1997), review denied, 134 Wash.2d 1012, 954 P.2d 276 (1998). "Appropriate circumstances generally include `bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff.'" Id. at 875, 940 P.2d 671 (quoting Finkelstein v. Sec. Props., Inc., 76 Wash.App. 733, 739-40, 888 P.2d 161 (1995).) "Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a `garden variety claim of excusable neglect.'" Id. (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).[[25]]
Although originally applied in civil cases, these principles have also been applied in at least three criminal cases. The first involved former RCW 9.94A.142, while the others involved RCW 10.73.090.
In State v. Duvall,[26] the prosecutor and defense counsel timely signed, and the court timely entered, what appeared to be an agreed order setting restitution. Months later, the order was later set aside because the defendant had not authorized his attorney to sign it. The defendant then contended that a replacement order was prohibited because the 60-day statutory period for setting restitution had long since expired. Division One reasoned that when the trial court entered its original order, it "justifiably relied on Duvall's purported consent via his attorney."[27] Accordingly, it concluded that "the circumstances were in every way appropriate for equitable tolling[,]" and "that the trial court properly invoked its equitable powers to suspend the 60-day period from the date of entry of the first order until the date Duvall appeared in court seeking relief from that order."[28]
In In re Hoisington,[29] the prosecutor and defense counsel both thought that the maximum term for the crime charged was ten years. Defense counsel so advised Hoisington, who pled guilty. Before sentencing, both attorneys realized that the maximum term was life in prison. Defense counsel advised Hoisington to go ahead with sentencing, but allegedly did not advise him, based on cases like State v. Miller,[30] that he could specifically enforce his plea agreement. Hoisington went ahead, and the trial court *122 imposed 325 months.[31] Years later, after unsuccessfully pursuing two direct appeals and a prior personal restraint petition (PRP), Hoisington filed a new PRP in which he again claimed ineffective assistance of counsel. When the State responded that the new PRP was time-barred under RCW 10.73.090, Hoisington replied that he had "raised the issue of specific enforcement of the plea agreement in his two appeals and in a prior personal restraint petition[;]"[32] that the court had failed to address it; and that RCW 10.73.090 should be equitably tolled. Division Three agreed and granted the petition. It ruled:
The circumstances here are appropriate for equitable tolling. Mr. Hoisington clearly raised the specific enforcement/ineffective assistance issue in his pro se brief in his first appeal. The court did not address the issue in its opinion deciding that appeal. He raised the issue again in a subsequent appeal and in a prior personal restraint petition, but the court continued to ignore it. Mr. Hoisington exercised due diligence. The fault is with the court for not addressing his claim when he first raised it in his direct appeal. We therefore hold that the one-year statute of limitation of RCW 10.73.090 was equitably tolled....[[33]]
In State v. Robinson,[34] the defendant pled guilty on July 16, 1998. Almost a year later, on Wednesday, July 13, 1999, she mailed a motion to withdraw her plea to the trial court clerk. The clerk did not receive her motion until Monday, July 19, 1999, so Robinson claimed that RCW 10.73.090 should be equitably tolled. Although noting that "[e]quitable tolling `permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed'[,]"[35] Division One held that "Robinson's situation does not support application of equitable tolling" and that her motion therefore was time-barred.[36] The court reasoned (1) that postal delay was the most likely explanation for Robinson's tardiness; and (2) that "postal delay is such a common experience that any litigant who has a statute of limitations looming, as this one was, ... should probably either file by facsimile transmission where permitted ... or mail the document ... early enough to account for all but the most egregious postal delay."[37]
As in Duvall and In re Hoisington, the unique circumstances here are appropriate for equitable tolling. When Littlefair pled, he did not know that he was likely to be deported. His lack of knowledge was not due to any fault or omission on his part; rather, it was due to a series of mistakes by his attorney, the court, and arguably the INS. The attorney failed to inquire about citizenship. He had also stricken subsection (n), contrary to the instructions on the written plea form. Quite reasonably and understandably, Littlefair did not think the stricken subsections applied to him, so he did not read them. The court failed to note that subsection (n) had been stricken contrary to the form's instructions, and it did not ascertain whether Littlefair had been properly advised of possible deportation consequences. Neither Littlefair nor the court initialed the subsections that had been stricken, so subsection (n) was not noted even for its absence. Inexplicably, the INS delayed more than two years before notifying Littlefair that he was subject to deportation,[38] and *123 during that entire period, Littlefair was unaware that deportation was a consequence of his plea. Based on this unique and bizarre series of events, we conclude that the one-year time period in RCW 10.73.090 should be equitably tolled from the date of his plea (October 17, 1996) to the date on which he first discovered that deportation was a consequence of his plea (November 2, 1998); that he filed his motion within one year after November 2, 1998; and thus that his motion is not time-barred.[39]

II.
The second issue is whether the trial court erred by denying Littlefair's motion to withdraw his plea of guilty. Littlefair claims (1) that RCW 10.40.200 was not followed; (2) that his plea was not knowing, voluntary or intelligent; and (3) that he did not receive effective assistance of counsel. His first claim is dispositive, so we do not reach the others.
RCW 10.40.200 provides:
(1) The legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea. It is further the intent of the legislature that at the time of the plea no defendant be required to disclose his or her legal status to the court.
(2) Prior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A defendant signing a guilty plea statement containing the advisement required by this subsection shall be presumed to have received the required advisement. If, after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty and enter a plea of not guilty. Absent a written acknowledgement by the defendant of the advisement required by this subsection, the defendant shall be presumed not to have received the required advisement.
(3) With respect to pleas accepted prior to September 1, 1983, it is not the intent of the legislature that a defendant's failure to receive the advisement required by subsection (2) of this section should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid.
The operative language of this statute is in its second subsection, which contains four sentences. The first sentence applies at the time of the plea. It requires that the court ascertain, before accepting the plea, that the defendant has been advised of the deportation consequences of his plea.
*124 The third sentence applies after the plea and, when necessary, after judgment. It requires that the plea and judgment be set aside if the defendant was not properly advised and he or she shows that the conviction may have deportation consequences.
The second and fourth sentences establish presumptions to be used when determining whether the defendant was properly advised. The second sentence states if the defendant signed a written plea form containing appropriate language, he or she shall be presumed to have received the required advisement. The fourth sentence states that in the absence of a plea form or other "written acknowledgment," the defendant shall be presumed not to have received the required advisement.
In this case, Littlefair signed a written plea form in which his attorney had "place[d] three X's on paragraph (n) indicating that the paragraph did not apply."[40] Accordingly, he did not sign a plea statement or other "written acknowledgement" containing the advice RCW 10.40.200 requires, and he is "presumed not to have received" the advice required by RCW 10.40.200.[41]
This presumption is confirmed by the trial court's express findings of fact. Neither Littlefair's attorney nor the attorney's associate ever advised Littlefair concerning "the immigration consequences" of his plea,[42] and he entered his guilty plea without "know[ing] from his attorneys or any other source that he would be subject to deportation."[43] He was not advised as RCW 10.40.200 requires, and the trial court erred by denying his motion to withdraw his plea.[44]
Our conclusion is not affected by whether Littlefair had or lacked a constitutional right to be advised of the deportation consequences of his plea. The legislature can create statutory rights not found in the constitution,[45] and it did that when it enacted RCW 10.40.200.[46]
Our conclusion is supported by the history of RCW 10.40.200, which begins with a case called State v. Malik.[47] The defendant in Malik was a Pakistani national. He pled guilty to a drug charge without knowing he would be deported. He "moved to withdraw his plea ... because he did not know that deportation would result from it."[48] The superior court denied his motion on January 27, 1983, and he timely appealed to Division One.
On February 14, 1983, members of the legislature introduced a bill requiring that a defendant be advised of deportation consequences before pleading guilty.[49] The bill passed the House in March, the Senate in April, and was signed by the governor in *125 May.[50] It was codified as RCW 10.40.200 and took effect on September 1, 1983.[51]
In June 1983,[52] the Supreme Court implemented the new statute by amending the written plea form set forth in CrR 4.2. The amendment inserted in the plea form, effective September 1, 1983, a paragraph advising that if a defendant is not a United States citizen, his or her guilty plea may result in deportation, exclusion from the United States, or a denial of naturalized citizenship.[53]
On April 30, 1984, Division One issued its opinion in Malik's appeal. Quoting from a 1973 federal case and a 1976 federal case, it held that "[t]he possibility of deportation was a collateral consequence of Malik's guilty plea[,]" and that "[t]he trial court did not err by denying his motion to withdraw the plea."[54] Division One did not mention the new statute, which by then had been effective for about eight months, presumably because the new statute did not apply to Malik's appeal.
We draw two lessons from this history, each of which supports our conclusion above. First, when the legislature enacted RCW 10.40.200, it intended to grant a statutory right to be advised of deportation consequences that would supplement whatever constitutional right a defendant might (or might not) have. Second, Division One's opinion in Malik may be correct as to pleas entered before September 1, 1983, but it is incomplete and thus inaccurate as to pleas entered thereafter. It discusses only the constitutional right to be advised, omitting even to mention the statutory right that took effect September 1, 1983.
Our conclusion is further supported by State v. Holley.[55] In that case, the defendant had lived in the United States since age 4 but had never become a citizen. When he pled guilty to gun and drug crimes, he submitted a written plea form that said deportation was a possible consequence. Eight months later, he moved to withdraw his pleas, but the trial court denied his motion. On appeal, he claimed violations of his constitutional right to due process, his constitutional right to effective assistance of counsel, and his statutory rights under RCW 10.40.200. Although we rejected his constitutional claims, citing Malik and its progeny, we concluded that he might still have a statutory claim under RCW 10.40.200. The record did not show whether his statutory rights had been observed, so we remanded for a hearing and findings on that issue.
Our conclusion is consistent with the remainder of the cases decided since Malik. In In re Personal Restraint Petition of Peters,[56] the defendant pled guilty on March 25, 1983. RCW 10.40.200 was not then in effect, so it did not apply to the case.
In In re Personal Restraint Petition of Yim[57] and State v. Martinez-Lazo,[58] the courts considered the existence of a constitutional right to be advised, but not the existence of a right under RCW 10.40.200. As far as the opinions show, no one raised or argued the statute.[59]
In State v. Jamison,[60] the appellate court noted that the trial court had found, based on substantial evidence, that "Jamison was *126 properly advised as required by RCW 10.40.200[.]"[61] Other than that, the appellate court focused on constitutional rights.
In State v. Cortez,[62] the defendant signed a written plea form that told him he might be deported if he pled guilty. Although he later moved to set aside his plea, he "presented no evidence to indicate he did not understand the rights set forth in his plea agreement[.]"[63] The trial court set aside the plea not because of any defect in the plea proceeding, but because it thought "deportation was too harsh."[64] Concluding that RCW 10.40.200 had been satisfied, the appellate court reinstated the plea.
In summary, RCW 10.40.200 gave Littlefair a statutory right, independent of any constitutional right, to be advised of the deportation consequences his plea. He was not so advised due to a series of miscues by his attorney and the trial court. Thus, we vacate the plea and sentence and remand for further proceedings.
I concur: QUINN-BRINTNALL, A.C.J.
BRIDGEWATER, J. (dissenting).
Peter T. Littlefair, a Canadian citizen, appeals the trial court's order denying his 1999 motion to vacate his judgment and sentence and withdraw his 1996 guilty plea. I would hold that even though Littlefair was not advised of deportation possibilities when he entered his plea, his motion to vacate was untimely because it was not brought within one year after judgment. The parties did not raise equitable tolling and I would hold it to be inapplicable without further briefing and argument. And I would affirm our holding in State v. Holley, 75 Wash.App. 191, 876 P.2d 973 (1994), that the failure to advise a defendant of possible deportation consequences is a collateral consequence of a conviction. Thus, because the trial court made specific findings that were not challenged, that Littlefair's attorneys did not affirmatively misrepresent to him deportation consequences, the error does not rise to constitutional harm or ineffective assistance of counsel. I would affirm the conviction.
In March 1996, the State charged Peter T. Littlefair with both manufacturing marijuana and possession of marijuana with intent to deliver. Littlefair testified that he told the Skamania County Jail personnel that he was a Canadian citizen.
In October 1996, Littlefair pleaded guilty to manufacturing marijuana. On the day of the plea hearing, Littlefair's attorney provided him the plea agreement, which included a standard statement of defendant on plea of guilty form. Each separate paragraph of the statement was alphabetically denominated. Littlefair's attorney crossed out with three "x"s paragraphs that did not pertain to him. Incorrectly crossed out with those three "x"s was the deportation warning in paragraph "n." While paragraph "n" informed Littlefair that if he was not a United States citizen a guilty plea is grounds for deportation, because it was crossed out, Littlefair testified that he did not read it when he reviewed his plea agreement.
During the plea hearing, the trial court inquired whether Littlefair's attorney had gone over the agreement with him and whether he understood it. Littlefair responded that he did and admitted he committed the crime. The court accepted Littlefair's guilty plea and sentenced him to two days confinement, 240 hours of community service work, 24 months supervision and about $3,200 in costs and fines.
In November 1998, the Immigration and Naturalization Service informed Littlefair that it intended to hold an administrative hearing to determine if it should deport him for committing a felony. In response, in May 1999, Littlefair filed a motion to vacate his 1996 judgment and sentence. In the motion, Littlefair claimed that he would not have pleaded guilty to the manufacture of marijuana charge if he had known that it could result in his deportation. The court, however, denied his motion to vacate and his subsequent motion for reconsideration.
*127 After oral argument on appeal, we sent the matter back to the trial court for an evidentiary hearing under RAP 9.11. The trial court made the following pertinent findings:
 Littlefair did not tell his attorney or anyone else involved in the case that he was not a U.S. citizen, except a booking officer;
 Littlefair did not receive any advice from either of his attorneys regarding deportation consequences. They did not question his citizenship because he was not a person of color and did not have a Hispanic surname;
 Littlefair was not told anything about why paragraph "n" was crossed out;
 Littlefair was not affirmatively misinformed about the deportation consequences of pleading guilty;
 Littlefair's attorneys neglected to inform him of the deportation consequences.

I. CrR 7.8(b)
The applicable superior court criminal rule to vacate a criminal judgment is CrR 7.8(b), which provides as follows:
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.6;
(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) The judgment is void; or
(5) Any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time and for reasons (1) and (2) not more than 1 year after the judgment, order, or proceeding was entered or taken, and is further subject to RCW 10.73.090,.100, .130, and .140. A motion under section (b) does not affect the finality of the judgment or suspend its operation.
The trial court reviewed Littlefair's motion to vacate under CrR 7.8(b)(1). Littlefair contends that review should have been under CrR 7.8(b)(5), and not CrR 7.8(b)(1). In any case, we review a CrR 7.8(b) motion for an abuse of discretion. State v. Gomez-Florencio, 88 Wash.App. 254, 258, 945 P.2d 228 (1997), review denied, 134 Wash.2d 1026, 958 P.2d 314 (1998). The court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. State v. Olmsted, 70 Wash.2d 116, 119, 422 P.2d 312 (1966).
It is undisputed that the crossed out deportation warning in Littlefair's statement on plea of guilty was a mistake under CrR 7.8(b)(1). Littlefair's argument that the mistake was substantial enough to fall under CrR 7.8(b)(5), however, is unpersuasive.
Relief under CrR 7.8(b)(5) is limited to extraordinary circumstances not covered by any other section of the rule. State v. Brand, 120 Wash.2d 365, 369, 842 P.2d 470 (1992); State v. Olivera-Avila, 89 Wash.App. 313, 319, 949 P.2d 824 (1997); State v. Cortez, 73 Wash.App. 838, 841-42, 871 P.2d 660 (1994). "[E]xtraordinary circumstances must relate to fundamental, substantial irregularities in the court's proceedings or to irregularities extraneous to the court's action." Olivera-Avila, 89 Wash.App. at 319, 949 P.2d 824 (citing State v. Aguirre, 73 Wash.App. 682, 688, 871 P.2d 616, review denied, 124 Wash.2d 1028, 883 P.2d 326 (1994)). A conviction should be vacated only in those limited circumstances, "where the interests of justice most urgently require." State v. Shove, 113 Wash.2d 83, 88, 776 P.2d 132 (1989). CrR 7.8(b)(5) "does not apply when the circumstances allegedly justifying the relief existed at the time the judgment was entered." Gomez-Florencio, 88 Wash.App. at 259, 945 P.2d 228.
In Gomez-Florencio, 88 Wash.App. 254, 945 P.2d 228, the defendant contended that the trial court erred in not highlighting for him the deportation warning in his plea agreement. The court held that CrR *128 7.8(b)(5) did not apply because the prior convictions, which the State failed to discover, existed at the time of the defendant's original sentencing. The court also ruled that although the defendant alleged it was the State's neglect, and the State alleged it was the defendant's fraud that prevented discovery of the defendant's prior convictions, other areas of the rule covered both reasons. Similar to the defendant's prior convictions in Gomez-Florencio, Littlefair's Canadian citizenship existed at the time he pleaded guilty, and he told neither his attorneys nor the court that he was a Canadian citizen when he pleaded guilty. Because Littlefair's citizenship existed at the time he pleaded guilty and CrR 7.8(b)(1) covers Littlefair's situation as a mistake or neglect, CrR 7.8(b)(5) does not apply. See Gomez-Florencio, 88 Wash.App. at 259, 945 P.2d 228 (relief under CrR 7.8(b)(5) limited to extraordinary circumstances not covered by any other section of the rule). Thus, the court did not abuse its discretion in finding relief under CrR 7.8(5) unavailable to Littlefair.
Littlefair also contends that the court erred in ruling that his CrR 7.8(b) motion was untimely. He argues that RCW 10.40.200[65] sets forth no time limit for a defendant to withdraw a guilty plea. His argument fails. Under Washington case law, RCW 10.40.200 allows the defendant to vacate judgment and withdraw a guilty plea, but only within one year after judgment is filed. The one-year time limitation for a CrR 7.8(b)(1) motion is plainly set forth in CrR 7.8(b). See also RCW 10.73.090 (collateral attack on judgment may not be filed more than one year after final judgment). Thus, the court did not err.

II. Equitable Tolling
It was abundantly clear that Littlefair did not raise the doctrine of equitable tolling at the trial court or on his appeal. Littlefair relied on CrR 7.8(b)(5), which did not have the one-year limitation. The majority applies the doctrine of equitable tolling without briefing or argument, at either the trial or appellate level, by either party. The majority may be correct that equitable tolling applies, but the better appellate practice would be to at least allow the parties the opportunity to address the principle rather than just apply it. After all, in this case we did send the matter back for fact-finding regarding Littlefair's attorney's actions; we could just have easily asked for supplemental briefing on this important doctrine that the majority holds is decisive.
In any event, I would not apply the doctrine of equitable tolling to the error Littlefair's attorney committed in this case. The cases that have permitted its use, as noted by the majority, have allowed it only sparingly and have found circumstances for its use where there has been bad faith, deception, or false assurances on one side and due diligence on the part of the other. See In re Hoisington, 99 Wash.App. 423, 430, 993 P.2d 296 (2000). In this case, when the trial court took testimony regarding Littlefair's attorney's actions, it did not find bad faith, deception, or false assurances, it found neglect. Without a basis of bad faith, deception, or false assurances (within this last category, I would permit "affirmative misrepresentations" to form a basis for application of the doctrine), I would not apply equitable tolling as to the error Littlefair's attorney committed. Also, because the error does not rise to constitutional significance, it is not ineffective assistance under Holley, 75 Wash.App. at 198, 876 P.2d 973, the neglect should not trigger equitable tolling.
The majority also declines to address any impact of our referral back to the trial court for an evidentiary fact-finding hearing. The majority states, "His [Littlefair's] lack of knowledge was not due to any fault or omission on his part[.]" Majority opinion at 122-123. This is not supported by any evidence *129 or by any of the facts adduced at the fact-finding hearing (there is no duty under the statute for the alien to disclose his status in this country at the time of plea, RCW 10.40.200(1)). The majority also relies on no fact for the proposition that Littlefair should not have known that his status might be in jeopardy with the commission of a felony.
Likewise, the majority does not address whether Littlefair's testimony at the August 26, 1996 suppression hearing, that he was born in Canada and raised in New Jersey, is sufficient to satisfy the due diligence consideration of equitable tolling and whether this testimony should have alerted the court to inquire into Littlefair's citizenship status when he pleaded guilty on October 17, 1996. It may be that because Littlefair informed the trial court at his suppression hearing that he was born in Canada and raised in New Jersey, he acted with due diligence, and the court, by not inquiring into Littlefair's citizenship and determining whether he was advised of possible deportation consequences and not noting that the deportation warning had been stricken from Littlefair's plea agreement, created a false assurance to trigger equitable tolling. Littlefair's testimony at the suppression hearing, however, was not as to his current citizenship; it was only as to his past residence. He did not testify concerning his parentage, i.e., if he had mixed nationality, or if he had dual citizenship until any certain age. I would think that the remaining question is whether the trial court should have been alerted at this stage to have inquired some two months later as to Littlefair's citizenship. Given these unanswered questions, I would not decide this issue under equitable tolling without briefing and argument.

III. Direct or Collateral Consequence Due Process
Littlefair contends that because he was not sufficiently warned about deportation consequences at the time he entered his guilty plea, his guilty plea was involuntary. His contention fails.
Due process requires that a guilty plea be knowing, intelligent, and voluntary. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996); In re Peters, 50 Wash.App. 702, 704, 750 P.2d 643 (1988). Due process also requires that a guilty plea be made with knowledge of its direct consequences. In re Peters, 50 Wash.App. at 704, 750 P.2d 643; Holley, 75 Wash.App. at 196, 876 P.2d 973. The defendant need not, however, be advised of all possible collateral consequences of his plea. State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980). "The distinction between direct and collateral consequences of a plea `turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment'." Barton, 93 Wash.2d at 305, 609 P.2d 1353 (quoting Cuthrell v. Dir., Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir.1973)).
It is well settled that deportation is a collateral consequence of a guilty plea. State v. Jamison, 105 Wash.App. 572, 591-92, 20 P.3d 1010, review denied, 144 Wash.2d 1018, 32 P.3d 283 (2001); In re Yim, 139 Wash.2d 581, 588, 989 P.2d 512 (1999); Holley, 75 Wash.App. at 196, 876 P.2d 973; State v. Ward, 123 Wash.2d 488, 513, 869 P.2d 1062 (1994); Peters, 50 Wash.App. at 704, 750 P.2d 643. "Deportation with no possibility of reentry into the United States, even if an absolute certainty following conviction of an aggravated felony as defined by federal law, remains collateral to the criminal prosecution because it is `not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility.'" Jamison, 105 Wash.App. at 593, 20 P.3d 1010 (quoting State v. Martinez-Lazo, 100 Wash.App. 869, 877, 999 P.2d 1275, review denied, 142 Wash.2d 1003, 11 P.3d 827 (2000)). Thus, the fact that a defendant entered a guilty plea, unaware of the potential deportation consequences of conviction, does not, by itself, establish a due process violation. Holley, 75 Wash.App. at 196, 876 P.2d 973. That a defendant may subjectively feel that deportation and permanent exclusion is a harsh punishment does not alter the analysis. Jamison, 105 Wash.App. at 593, 20 P.3d 1010.
Although Littlefair was not warned as required under RCW 10.40.200, because deportation is a collateral consequence of a guilty *130 plea, the court did not err in denying Littlefair's motion to vacate judgment and withdraw his guilty plea.[66]See Holley, 75 Wash.App. at 198, 876 P.2d 973 (RCW 10.40.200 does not create a constitutional right to be advised of consequences, therefore, the failure to comply with the statute does not create a constitutional harm).

IV. Ineffective Assistance of Counsel
Finally, Littlefair contends that because his attorney did not inform him of deportation consequences, he received ineffective assistance of counsel. As we noted in Holley, trial counsel has an obligation to aid a defendant "`in evaluating the evidence against him and in discussing the possible direct consequences of a guilty plea.'" Holley, 75 Wash.App. at 197, 876 P.2d 973 (quoting State v. Malik, 37 Wash.App. 414, 417, 680 P.2d 770, review denied, 102 Wash.2d 1023 (1984)). A defendant, however, need not be advised of the possibility of deportation because a deportation proceeding that occurs subsequent to the entry of a guilty plea is merely a collateral consequence of that plea. In re Yim, 139 Wash.2d at 588, 989 P.2d 512.
But, as we pointed out in Holley, "erroneous advice about a matter collateral to the conviction can constitute constitutionally deficient performance." Holley, 75 Wash.App. at 198, 876 P.2d 973 (citing State v. Stowe, 71 Wash.App. 182, 858 P.2d 267 (1993)). Littlefair asserted a constitutional error, that being ineffective assistance of counsel, and hoped to avoid any time limitation upon his claim.[67] We sent the matter back for an evidentiary hearing to determine whether his attorneys affirmatively misinformed him. The findings made at the evidentiary hearing dispose of this claim. They reveal that Littlefair never alerted his attorneys to his citizenship, that his attorneys never advised him regarding possible deportation, and that his attorneys did not affirmatively misrepresent to him possible deportation consequences. Thus, Littlefair has failed to show that he was deprived of his constitutional right to effective assistance of counsel.
I would affirm the conviction.
NOTES
[1] Littlefair's counsel at the trial level was different from his counsel on appeal.
[2] Clerk's papers (CP) at 49.
[3] The form that was used had not been updated to account for amendments to CrR 4.2(g) that took effect on September 1, 1996. Those amendments, however, are not material here.
[4] CP at 5-8.
[5] Report of Proceedings (RP) at 17.
[6] Supp. Finding 6.
[7] Supp. Finding 3.
[8] Supp. Finding 7.
[9] The trial judge did note this at a hearing held three years later. See RP 73-74.
[10] CP 51, lines 3-4.
[11] CP 20.
[12] RP at 73; see also RP at 75.
[13] RP at 73-74.
[14] CrR 7.8(b) contains parallel provisions. It adds little to the statute for purposes of this case. For convenience, we refer only to the statute.
[15] Br. of Appellant at 32.
[16] 99 Wash.App. 423, 993 P.2d 296 (2000).
[17] In re Hoisington, 99 Wash.App. at 431, 993 P.2d 296; see also State v. Robinson, 104 Wash.App. 657, 667, 17 P.3d 653, review denied, 145 Wash.2d 1002, 35 P.3d 380 (2001) (recognizing that RCW 10.73.090 can be equitably tolled, but declining to toll it in the particular case). For additional cases in which the court or a party referred to RCW 10.73.090 as a statute of limitation, or as a procedural bar instead of a jurisdictional bar, see In re Personal Restraint Petition of Stoudmire, 145 Wash.2d 258, 267, 36 P.3d 1005 (2001); In re Personal Restraint Petition of Meyer, 142 Wash.2d 608, 614, 16 P.3d 563 (2001); Shumway v. Payne, 136 Wash.2d 383, 397, 964 P.2d 349 (1998); In re Personal Restraint Petition of Benn, 134 Wash.2d 868, 884 n. 3, 952 P.2d 116 (1998).
[18] 86 Wash.App. 871, 940 P.2d 671 (1997), review denied, 134 Wash.2d 1012, 954 P.2d 276 (1998).
[19] Duvall, 86 Wash.App. at 874, 940 P.2d 671 (footnotes omitted).
[20] 28 U.S.C. § 2255 provides in part that "[a] 1-year period of limitation shall apply" to a motion that collaterally attacks a judgment.
[21] See, e.g., United States v. Patterson, 211 F.3d 927, 930 (5th Cir.2000); Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir.2000); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir.1999); Calderon v. U.S. Dist. Court, 163 F.3d 530, 542 (9th Cir.), cert. denied, 523 U.S. 1063, 118 S.Ct. 1395, 140 L.Ed.2d 653 (1998).
[22] Mark A. Wilner, Justice at the Margins: Equitable Tolling of Washington's Deadline for Filing Collateral Attacks on Criminal Judgments, 75 WASH. L. REV. 675, 695 (2000).
[23] Incidentally, this conclusion is consistent with In re Stoudmire, 145 Wash.2d at 258, 36 P.3d 1005, and In re Personal Restraint Petition of Stoudmire, 141 Wash.2d 342, 5 P.3d 1240 (2000). In those cases, Stoudmire alleged that his plea was invalid because he had not known that mandatory community placement would last two years. He sought post-conviction relief on September 26, 1994, but he "was already aware of the two-year mandatory placement" on September 20, 1993. 145 Wash.2d at 262, 36 P.3d 1005. He did not claim equitable tolling, and he could not successfully have done so where he knew all necessary facts more than a year before filing.
[24] 104 Wash.App. 657, 17 P.3d 653.
[25] 104 Wash.App. at 667, 17 P.3d 653; see also State v. Duvall, 86 Wash.App. at 874-75, 940 P.2d 671; In re Hoisington, 99 Wash.App. at 430-31, 993 P.2d 296.
[26] 86 Wash.App. 871, 940 P.2d 671.
[27] 86 Wash.App. at 875, 940 P.2d 671.
[28] 86 Wash.App. at 876, 940 P.2d 671.
[29] 99 Wash.App. 423, 993 P.2d 296.
[30] 110 Wash.2d 528, 535, 756 P.2d 122 (1988).
[31] This was actually the second sentence the trial court imposed, but that makes no difference here.
[32] 99 Wash.App. at 430, 993 P.2d 296.
[33] 99 Wash.App. at 431-32, 993 P.2d 296.
[34] 104 Wash.App. 657, 17 P.3d 653.
[35] 104 Wash.App. at 667, 17 P.3d 653.
[36] 104 Wash.App. at 668, 17 P.3d 653. For reasons not related to equitable tolling, the later case of State v. Hurt, 107 Wash.App. 816. 27 P.3d 1276 (2001), trumps Robinson with respect to incarcerated prisoners. Hurt adopted "the federal mailbox rule," under which the motion of an incarcerated prisoner is deemed filed when mailed. 107 Wash.App. at 828, 27 P.3d 1276.
[37] 104 Wash.App. at 668-69, 17 P.3d 653.
[38] Compare State v. Holley, 75 Wash.App. 191, 192, 194, 876 P.2d 973 (1994) (judgment entered October 29, 1992; notice of deportation received March 24, 1993); State v. Martinez-Lazo, 100 Wash.App. 869, 871-72, 999 P.2d 1275, review denied, 142 Wash.2d 1003, 11 P.3d 827 (2000) (judgment entered January 1998; notice of deportation received October 1998).
[39] To the extent that CrR 7.8(b) might differ from RCW 10.73.090, we also conclude that Little fair filed his motion within "a reasonable time."
[40] Supp. Finding 4.
[41] RCW 10.40.200(2), fourth sentence (emphasis added).
[42] Supp. Findings 3, 7.
[43] Supp. Finding 6; see also Supp. Findings 3, 5, 7.
[44] We do not overlook the trial court's finding that because subsection (n) was not completely obliteratedit only had three Xs through its letter designationLittlefair "had the opportunity" to read it. Original Finding of Fact VIII, CP at 52, line 11. Littlefair's "opportunity" to read the paragraph was a factor to be considered, but its force was exhausted once the trial court found that Littlefair had not been advised of the deportation consequences of his plea. See Supp. Finding 6.
[45] See e.g., Clark v. Dwyer, 56 Wash.2d 425, 431, 353 P.2d 941 (1960) ("power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions");WA Const. art. 2, § 1 ("legislative authority of the state of Washington shall be vested in the legislature"); Brower v. State, 137 Wash.2d 44, 54, 969 P.2d 42 (1998) ("legislative authority of the State is vested in the Legislature").
[46] In making this statement, we do not consider the current viability of the somewhat arbitrary distinction between a plea's "direct" and "collateral" consequences. Recently, however, we noted that the distinction may be breaking down. See State v. McDermond, ___ Wash.App. ___, 47 P.3d 600, 603 (2002).
[47] 37 Wash.App. 414, 680 P.2d 770, review denied, 102 Wash.2d 1023 (1984).
[48] Malik, 37 Wash.App. at 415, 680 P.2d 770.
[49] House Journal, 1983 Regular Session, p. 290-91, substitute House Bill No. 522.
[50] House Journal, 1983 Regular Session, p. 860, substitute House Bill No. 522; Senate Journal, 1983 Regular Session, p. 1293, substitute House Bill No. 522, Laws of 1983, Ch. 199, § 1, codified at RCW 10.40.200.
[51] Laws of 1983, Ch. 199, § 1, codified at RCW 10.40.200.
[52] 99 Wash.2d at 1119-22.
[53] CrR 4.2; 99 Wash.2d at 1122.
[54] 37 Wash.App. at 416, 680 P.2d 770.
[55] 75 Wash.App. 191, 876 P.2d 973.
[56] 50 Wash.App. 702, 750 P.2d 643 (1988).
[57] 139 Wash.2d 581, 989 P.2d 512 (1999).
[58] 100 Wash.App. 869, 999 P.2d 1275.
[59] The Yim court also cited State v. Ward, 123 Wash.2d 488, 512-13, 869 P.2d 1062 (1994) and Fruchtman v. Kenton, 531 F.2d 946, 948-49 (9th Cir.1976). Ward discussed direct and collateral consequences generally. It did not address deportation consequences or RCW 10.40.200. Fruchtman antedated RCW 10.40.200.
[60] 105 Wash.App. 572, 20 P.3d 1010, review denied, 144 Wash.2d 1018, 32 P.3d 283 (2001).
[61] 105 Wash.App. at 591, 20 P.3d 1010.
[62] 73 Wash.App. 838, 871 P.2d 660 (1994).
[63] 73 Wash.App. at 841, 871 P.2d 660.
[64] 73 Wash.App. at 840, 871 P.2d 660.
[65] RCW 10.40.200(2) states in pertinent part as follows:

If, after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty and enter a plea of not guilty.
[66] RCW 10.40.200 requires that a defendant, who is not a United States citizen, be warned before accepting a guilty plea, of the potential conviction consequences that arise because they are not a United States citizen. RCW 10.40.200, however, does not require a defendant to disclose his or her legal status to the court. To ensure meeting the warning requirement of RCW 10.40.200, the court should probably always advise a defendant of the potential conviction consequences that arise if they are not a United States citizen, that being deportation, exclusion from admission to the United States, or denial of naturalization.
[67] I would not rule upon a time limit for raising a violation of effective assistance of counsel under the U.S. CONST. amend. 6 because it is not before us.