# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NOS. 69963-6-I |
| | ) | 70060-0-I |
| Respondent, | ) | |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| PAOLO CESAR GALEAZZI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |
| | ) | |

LAU, J. — Paolo Galeazzi appeals his judgment and sentence for second degree taking a motor vehicle without permission and possession of methamphetamine with intent to manufacture or deliver. He argues that the State violated the plea agreement by increasing the severity of its sentencing recommendation and that the trial court erred in denying his motion to withdraw his plea. Because the trial court erred in failing to conduct an evidentiary hearing to determine whether an increase in the sentencing recommendation was justified, we vacate the judgment and sentence and remand for resentencing.

## FACTS

In July 2011, the State charged Paolo Galeazzi by amended information with violation of the Uniform Controlled Substances Act (VUCSA), specifically possession of

methamphetamine with intent to manufacture or deliver. Trial was delayed for various reasons until January 2013. In the intervening time, on May 8, 2012, the State charged Galeazzi with theft of a motor vehicle under a separate cause number.

On January 16, 2013, the trial court heard CrR 3.5 and 3.6 motions on the VUCSA charge and ruled that Galeazzi's statements to police and the evidence obtained in the search incident to Galeazzi's arrest were admissible. The next day, Galeazzi pleaded guilty to the VUCSA charge. The State later amended the theft of a motor vehicle charge to second degree taking a motor vehicle without permission ("TMV"). Galeazzi pleaded guilty to the TMV charge.[1]

The plea agreement in each case states that the agreement is an indivisible one encompassing both cause numbers. In each case, Galeazzi stipulated to the facts in the probable cause certification and agreed his criminal history was correct as stated in appendix B. In exchange for Galeazzi's guilty pleas, the State agreed not to file bail jumping charges in either cause number. The State agreed not to seek an exceptional sentence, and Galeazzi agreed not to seek any sentencing alternatives. On the TMV charge, the State agreed to recommend 25 months based on an offender score of 17 and a standard range of 22 to 29 months. On the VUCSA charge, the State agreed to recommend 65 months, plus the required community custody, based on an offender score of 15 and a standard range of 60 to 120 months. For both cause numbers, all parties signed the plea agreements immediately below the following provision: "The

---

[1] The parties filed separate sets of clerk's papers in appellate case number 70060-0-I (corresponding to King County Superior Court cause number 11-1-05993-2 KNT (VUCSA charge)) and appellate case number 69963-6-I (corresponding to King County Superior Court cause number 12-1-02213-1 KNT (TMV charge)). The two cases are linked for consideration by this court.

State's recommendation will increase in severity if additional criminal convictions are found <u>or if the defendant commits any new charged or uncharged crimes, fails to appear for sentencing or violates the conditions of release</u>." (Emphasis added.)

After his guilty pleas, Galeazzi was released from custody on condition that he commit "[n]o new law violations." The sentencing hearing was scheduled for February 8, 2013.·

Three days after pleading guilty, Galeazzi was arrested for eluding the police and ramming his vehicle into an occupied police vehicle. For these acts, the State charged Galeazzi on February 4, 2013, with attempting to elude and third degree assault.[2] Based on these new charges, the State informed Galeazzi that it would increase the severity of its sentencing recommendation to the court.

At the sentencing hearing, the defense moved to continue because the State had announced it would change its recommendation. Defense counsel requested time to investigate the new charges, attempt to negotiate a global resolution, and research whether a mere allegation was sufficient to relieve the State of its duty to abide by the recommendations in the plea agreement. The court denied the continuance:

> Now, frankly I haven't encountered the situation before where the State changes its sentencing recommendation, if that's what the State is planning on doing, with respect to the pleas that were taken before me. And maybe it's not appropriate for them to do that. I don't know. But I'm certainly prepared to hear the argument on that. But I think we need to go ahead with the sentencing on the matters that were pled.

---

[2] These new crimes were charged under King County Superior Court cause number 13-1-01218-5 KNT. Galeazzi was charged under a different cause number with felony harassment–domestic violence and fourth degree assault–domestic violence for crimes alleged to have occurred on December 24, 1012. These domestic violence crimes were committed before Galeazzi pleaded guilty, and the State did not consider them as new crimes under the plea agreement's language.

RP (Feb. 8, 2013) at 13-14.

On the 2012 TMV charge, the State did not increase its sentence recommendation. Defense counsel[3] agreed with Galeazzi's criminal history and offender score. As to the VUCSA charge, Galeazzi argued that any increase in the State's recommendation constituted a breach of the plea agreement. The State recommended 90 months instead of the agreed-upon 65 months due to Galeazzi's new offenses.[4] Defense counsel argued that the State must show by at least a preponderance of the evidence that Galeazzi violated the plea agreement before it is relieved of the contractual obligations under the plea agreement.

The court denied defense counsel's renewed continuance request, noting:

> I'm going to find that the State's recommendation is just that. It's a recommendation. This isn't exactly a breach of contract analysis I don't think; although, [defense counsel's] argument is an interesting one, because what the contract says is the State's going to change its recommendation if the defendant commits any new charged or uncharged crimes, fails to appear for sentencing, or violates the conditions of release. And the State has probable cause to believe that the defendant did one of those things and thereby is allowed to change its recommendations pursuant to the terms of the actual contract.[5]

RP (Feb. 8, 2013) at 24-25. The defense moved to withdraw the plea on grounds that the State breached the plea agreement by changing its recommendation. The court declared, "This is a mess. I'm going to go ahead with the sentencing hearing at this

---

[3] Galeazzi was represented by a different attorney on each offense.

[4] The prosecutor stated, "Your Honor, the State does believe that it is no longer bound by the felony plea agreement or the State's recommendation . . . ." RP (Feb. 8, 2013) at 28.

[5] The State submitted to the court the probable cause certifications for the new offenses.

point. [The prosecutor] can make whatever presentation he wants to make. Defense counsel of course can make whatever presentation they wish to make." RP (Feb. 8, 2013) at 25. The court ruled that the plea agreement terms allowed the State to change its recommendation.

The State reiterated its 90-month recommendation on the VUCSA charge. On the TMV charge, Galeazzi joined the State's recommendation for 25 months under the plea agreement. On the VUCSA charge, Galeazzi maintained that the State's violation of the plea agreement entitled him to withdraw his plea. Galeazzi also argued he was no longer bound by his VUCSA offender score stipulation. He recommended a low-end standard range sentence of 12 months based on a zero offender score. In the alternative, he requested a 60-month sentence if the State proved his criminal history.

The court imposed the agreed 25 months on the TMV charge to run concurrently with 80 months on the VUCSA charge. The State then argued that Galeazzi could not withdraw his stipulation to the offender score in the VUCSA case, and even if he could, the court could still rely on the stipulation he made in the TMV case. The court declared the State had not breached the plea agreement, but had merely changed its recommendation per the terms of the agreement. Galeazzi appeals.[6]

## ANALYSIS

A plea agreement is a contract between the State and the defendant. State v. Sledge, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997). Because plea agreements

---

[6] The two cases were linked for oral argument and are consolidated for purposes of this opinion due to overlapping facts and a shared legal issue, namely whether the plea agreement allowed the State to increase its sentencing recommendation upon allegations of new crimes committed by Galeazzi.

implicate fundamental due process rights, a prosecutor must adhere to the bargained-for terms. Sledge, 133 Wn.2d at 839. When a prosecutor breaches an agreement, a defendant is entitled to withdraw his plea or demand specific performance. In re Pers. Restraint of James, 96 Wn.2d 847, 851-52, 640 P.2d 18 (1982). These rights exist provided the defendant complies with the conditions of the agreement. James, 96 Wn.2d at 850.

Merely alleging that the defendant has violated a term of the agreement does not relieve the State of its duty. The court must hold an evidentiary hearing at which the defendant enjoys several due process rights, including the opportunity to call witnesses and to require "that the State prove, by a preponderance of the evidence, that the defendant has failed to perform his or her part of the agreement." James, 96 Wn.2d at 850.

> A hearing ensures that the right or the expectation is not arbitrarily denied. With plea bargains, if there were no evidentiary hearings, a defendant merely accused of postplea crimes, but innocent and later acquitted of them, could nonetheless lose the benefit of his or her bargain.

James, 96 Wn.2d at 851 (emphasis added).

In short,

> [a] prosecutor may not refuse to comply with his obligations under a plea bargain because of misconduct by the defendant subsequent to the entry of a guilty plea unless a due process evidentiary hearing is held wherein the state proves by a preponderance of the evidence that the defendant committed the misconduct and that the misconduct breached the plea bargain.

13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3418, at 26 (3d ed. 2004); see also State v. Morley, 35 Wn. App. 45, 47-48, 665 P.2d 419 (1983) (whether the State is relieved of its obligations under a plea

agreement by virtue of the defendant's nonperformance of his obligations is a question of fact to be determined after an evidentiary hearing at which the State has the burden of proving the defendant breached the agreement by a preponderance of the evidence) (citing James, 90 Wn.2d at 850); State v. Roberson, 118 Wn. App. 151, 159, 74 P.3d 1208 (2003) (State alleged it was not bound by the plea agreement because defendant failed to comply with its requirements; burden is on the State to prove by preponderance of the evidence that defendant failed to comply), overruled in part on other grounds in State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005).

Here, the sentencing court held no evidentiary hearing before permitting the prosecutor to recommend a harsher sentence than the agreed-upon sentence. Neither party called witnesses nor presented evidence aside from the State's submission of the probable cause statements for the alleged new crimes. The trial court's error deprived Galeazzi of his due process right to contest the State's allegation of misconduct.

The plea agreement specifies that the State's recommendation may increase if Galeazzi "commits" any new crimes whether charged or uncharged.[7] It also specifies that the recommendation may increase if Galeazzi violates the condition of his release requiring him to commit "[n]o new law violations." But whether or not Galeazzi committed the alleged new crimes—thereby violating his plea agreement and the

---

[7] The State contends the plea agreement "advises Galeazzi that criminal conduct resulting in arrest will jeopardize the sentencing recommendation contained in the plea agreement, even if charges have not been filed or a conviction has not been entered." Resp't's Br. at 10. The State mischaracterizes the plea agreement's language. The agreement specifies that the State's recommendation may increase if Galeazzi commits any new crimes but says nothing about arrest or the standard of proof necessary to determine whether he committed a new crime.

conditions of his release—is subject to James's due process requirement that an evidentiary hearing be held and that the State prove by a preponderance of the evidence that Galeazzi failed to perform his part of the agreement.[8]

The State contends that James, Morley, and Roberson are inapposite,[9] arguing, "Here, the State was not seeking to avoid its obligations under the plea agreement; rather, the State was performing pursuant to the plea agreement, as promised, by increasing its recommendation to the court after Galeazzi committed new crimes." Resp't's Br. at 12. The record fails to support this assertion. The State argued at sentencing, "[T]he State does not feel that it is bound by the felony plea agreement based on Mr. Galeazzi's post-plea actions." RP (Feb. 8, 2013) at 31-32 (emphasis added). Further, the State's argument is a distinction without a difference. In essence, the State sought to avoid its sentencing obligation by alleging Galeazzi committed new crimes. This is exactly what occurred in Morley, James, and Roberson. See Morley, 35 Wn. App. at 47 (plea agreement required State to recommend probation; State argued defendant violated plea agreement by consuming alcohol after his release and being arrested on misdemeanor charges); James, 96 Wn.2d at 848-49 (prosecutor refused to

---

[8] We agree with the State that "the language of the plea agreement does not expressly require conviction" to trigger an increase in the State's recommendation. Resp't's Br. at 10. Galeazzi does not contest that point. Rather, he contends that the trial court failed to require the State to prove he committed any new crimes—charged or uncharged—under the correct burden of proof as set forth in James.

[9] The State also argues, "Not one of these cases addresses the exact plea language that Galeazzi and the State agreed to under this agreement." Resp't's Br. at 12 (boldface omitted). This statement is misleading. The exact plea language in James, Morley, and Roberson is not quoted in those opinions and we thus cannot determine whether the language was the same as that in Galeazzi's plea. Our review of the cases indicates they were all decided on general due process grounds.

recommend probation when defendant was arrested for two additional misdemeanors following entry of his plea); Roberson, 118 Wn. App. at 158-59 (State argued it was not bound by plea agreement because defendant failed to comply with its requirements). As in Morley, here the State "equivocated in its recommendation because of defendant's subsequent misconduct." Morley, 35 Wn. App. at 47. James controls.

We remand to the trial court to conduct an evidentiary hearing at which the burden will be on the State to prove by a preponderance of the evidence that Galeazzi committed new crimes or otherwise failed to comply with the plea agreement's terms.[10] See James, 96 Wn.2d at 850-51 (if genuine factual dispute exists as to whether the defendant breached the agreement, evidentiary hearing is required);[11] State v. Hall, 32 Wn. App. 108, 110, 645 P.2d 1143 (1982) (citing James for the proposition that defendant is entitled to an evidentiary hearing if there is a genuine fact question as to defendant's compliance with the agreement but holding that the appellate court need not order an evidentiary hearing if defendant admitted breaching the agreement); Roberson, 118 Wn. App. at 159 (remanding for evidentiary hearing where trial court failed to perform one and our record was insufficient to resolve whether defendant

---

[10] Given the trial court's failure to conduct an evidentiary hearing to determine whether Galeazzi failed to comply with the plea agreement, our record is inadequate to determine whether the State's sentencing recommendation breached the agreement.

[11] In James, the court remanded to the trial court not for an evidentiary hearing, but to determine whether to allow the defendant to withdraw his plea or to grant specific performance of the plea agreement. James, 96 Wn.2d at 851-52. However, the James court noted that the defendant "contends he is not guilty of the alleged misdemeanors" and "the State does not deny these facts." James, 96 Wn.2d at 851. We see nothing in James sanctioning a per se breach rule and we decline to adopt one here. Given the existence of a genuine dispute over Galeazzi's compliance here, an evidentiary hearing is required. See Appellant's Br. at 13 ("Alternatively, this Court could remand for an evidentiary hearing.").

violated the plea agreement). If the State meets this burden, Galeazzi's convictions will stand. Galeazzi will be entitled to a new sentencing hearing. See Roberson, 118 Wn. App. at 159. If the State fails to carry its burden, Galeazzi will have the option of either specific enforcement of the original plea agreement or withdrawal of his plea. State v. Schaupp, 111 Wn.2d 34, 41, 757 P.2d 970 (1988).

## CONCLUSION

We vacate the judgment and sentence and remand for resentencing consistent with this opinion.

WE CONCUR:

-10-